**Marvin MARTIN, Petitioner-Appellant,**

v.

**James H. ROSE; William Leech, Respondents-Appellees.**

**No. 83–5378.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 20, 1984.

Decided Oct. 4, 1984.

Robert Tucker (argued), William Farmer, Federal Public Defender, Nashville, Tenn., for petitioner-appellant.

William M. Leech, Jr., Atty. Gen. of Tennessee, Jerry L. Smith, John F. Southworth, Jr., Asst. Attys. Gen. (argued), Nashville, Tenn., for respondents-appellees.

Before ENGEL and KENNEDY, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

CORNELIA G. KENNEDY, Circuit Judge.

Marvin Martin appeals from the District Court's denial of a writ of habeas corpus. We find that Martin was deprived of his right to effective assistance of counsel, and hold that he must be given a new trial.

The petitioner, Marvin "Cotton" Martin, was convicted of two counts of criminal sexual conduct in the first degree, two counts of incest, one count of sodomy, and two counts of crime against nature. The conviction arose from an incident alleged to have occurred in November 1978 involving Martin and his two stepdaughters, who were then ten and twelve.

Martin was indicted on December 4, 1978 but he was not tried until November 10, 1980. At the arraignment, no trial date was set and Martin was permitted to remain free on bond. During the next two years, the local prosecutor, Martin, and Martin's attorney appeared in court at the beginning of each term; when Martin's case was called, the prosecutor requested no trial date because of the possibility of a settlement, to which Martin's counsel acquiesced. Finally, the trial was scheduled for November 10, 1980. During this period, Martin's counsel and the prosecutor discussed the possibility of placing Martin on pretrial diversion. In a letter dated March 31, 1979, however, the prosecutor stated that because Martin was charged with crimes with a maximum sentence exceeding ten years, he was ineligible for diversion; Martin's attorney wrote him again, requesting diversion. After some additional conversation about the possibility of diversion, the prosecutor informed Martin's attorney on Thursday, November 6, 1980, that the charges would not be diverted and that the trial would go forward as scheduled.

On the following day, Martin's counsel filed a motion to dismiss for denial of a speedy trial and, alternatively, a motion to continue, alleging that he was unprepared to try the case. (Counsel had also filed a number of other pretrial motions earlier, which had been denied.) On Monday, November 10, the trial court heard arguments on the motions and denied them, although offering Martin's attorney a recess to interview a certain witness. After the court overruled the motions, denied certification for an interlocutory appeal, and announced that Martin's trial would begin immediately, Martin's counsel stated, "We do wish to rely on our Motions, and I don't want to be disrespectful to the Court, but in going to trial today, the defendant won't put on any proof, and I won't cross-examine or participate in the trial." The court assented without questioning him further, and jury selection began.

Martin's attorney did not participate in jury selection, but made this statement to the jury before the first witness was called:

Ladies and Gentlemen, I want to say this, just to satisfy your curiousity [sic] and for my own personal self. We have relied on certain Motions in this suit, and so the defendant has pled not guilty, and we'll sit here. But, I as an attorney, won't ask questions or make any argument or object or do any that type thing because we are relying on our motions. So we'll be here, but don't think that my lack of participation is, uh, that I'm a dummy over here, and I don't know what's going on. But we'll just be sitting ...

He then did not cross-examine any witnesses, make any objections, call any witnesses for the defense, make any closing argument, or object to any part of the court's charge to the jury.

The state offered testimony by Martin's stepdaughters. Both girls testified that Martin beat their mother and then forced them to perform sexual acts with him. No other evidence directly corroborated this testimony. The girls' grandmother testified that their mother had told her that Martin had sexually assaulted them. Testimony by a county social worker established that she brought charges against Martin based on the girls' account. A doctor testified that his examination of the girls was inconclusive as to whether either had en-

gaged in sexual intercourse, although he observed a large bruise on one girl's thigh.

The trial lasted less than one day. At the close of the government's case, the District Attorney moved to dismiss one count of sodomy, which had not been supported by testimony. The jury then found Martin guilty of all seven offenses remaining and sentenced him to the maximum term on each count: a term of life imprisonment for each count of criminal sexual conduct, a term of not less than ten or more than twenty-one years imprisonment for each count of incest, and a term of not less than ten nor more than fifteen years imprisonment for each count of crime against nature and the remaining one count of sodomy.

At a hearing on his motion for a new trial, Martin testified and denied the charges against him. Additional evidence was presented, purporting to show that the stepdaughters suffered from intellectual and emotional disabilities, and that the girls were encouraged to tell their story by their grandmother to get welfare money. The court denied the motion for a new trial, then held this colloquy with Martin:

> THE COURT: ... Now, you employed [your attorney] to represent you, didn't you?
>
> MR. MARTIN: (Nods head in affirmative)
>
> THE COURT: He is representing you?
>
> MR. MARTIN: Yeah.
>
> THE COURT: By employment? You employed him, is that right?
>
> [THE ATTORNEY]: Yes, Sir, Your Honor.
>
> MR. MARTIN: Yes, Sir.
>
> THE COURT: Are you satisfied with the way he is handling your case?
>
> MR. MARTIN: Yes, Sir.
>
> THE COURT: You are? I want you to be sure you understand that now?
>
> MR. MARTIN: Yes, Sir, I'm satisfied.

Martin's conviction was then appealed to the Tennessee Court of Criminal Appeals, with the same attorney as counsel. The appellate court reversed the convictions for sodomy and crimes against nature as double jeopardy and affirmed the remaining convictions. *State v. Martin,* 634 S.W.2d 639 (Tenn.Crim.App.1982). The court specifically considered and rejected Martin's arguments that the delay before his trial violated his right to a speedy trial and that his trial counsel was ineffective. *Id.* at 643–44. The Tennessee Supreme Court denied permission to appeal.

Martin then petitioned for a writ of habeas corpus. At the hearing in the District Court, Martin testified that he has a third-grade education and is illiterate. He also stated that his trial counsel had informed him that he would not participate in the trial, but did not explain further. Martin's counsel testified that he had refused to participate in the trial because he was not ready and believed that he would either waive his pretrial motions or render them harmless error. According to him, he had informed Martin that he would not participate in the trial, but did not explain his reasons or the consequences. The attorney also testified that after the trial, Martin's ex-wife, the girls' mother, gave him an affidavit stating that "he was innocent, the little girls had been put up by their grandmother to fabricate the story." The District Court denied the writ, and that denial is on appeal before this Court.

Martin argues that because his attorney refused to participate in his trial, he was deprived of effective assistance of counsel. The Supreme Court recently set out the standard for judging the effectiveness of counsel in *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that

the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

The Supreme Court in *Strickland* approved the standard of "reasonably·effective assistance" employed by all the Courts of Appeals and adopted by the Sixth Circuit in *Beasley v. United States*, 491 F.2d 687, 696 (6th Cir.1974) ("counsel ... rendering reasonably effective assistance"). Under this approach, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 104 S.Ct. at 2065. Deference is essential to judicial scrutiny: "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'." *Id.* at 2065–66, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955).

In the present case, Martin's attorney refused to participate in Martin's trial. The Tennessee Court of Criminal Appeals found that this did not constitute inadequate assistance of counsel because his omissions were "intentional trial tactics." *Martin*, 634 S.W.2d at 645. The District Court accepted this conclusion, adding that "at the time employed, [the attorney]'s trial tactic was taken for reasons that would appear sound to a competent criminal attorney." *Martin v. Rose*, No. 82–3787–M. slip op. at 8 (M.D.Tenn. Apr. 28, 1983).

Unquestionably, the attorney's failure to participate was a deliberate trial tactic; as the District Court below observed, "Indeed, it was his sole trial tactic." *Id.* at 6. In the nearly two years preceding Martin's trial, his counsel had been active, attempting to settle the case and filing motions to dispose of it. In addition to his legal research, he had interviewed or attempted to interview virtually all of the government's major witnesses. Most importantly, trial counsel was aware that Martin denied the charges against him. Yet, at the trial, after the motions to dismiss or to continue the case were denied, the attorney's choice of strategy was, as he informed his client, to "stand mute."

■ Under the analysis set forth in *Strickland*, even deliberate trial tactics may constitute ineffective assistance of counsel if they fall "outside the wide range of professionally competent assistance." *Id.* 104 S.Ct. at 2066. This accords with the earlier holding of the Sixth Circuit that "[d]efense strategy and tactics which lawyers of ordinary training and skill in the criminal law would not consider competent deny a criminal defendant the effective assistance of counsel, if some other action would have better protected a defendant and was reasonably foreseeable as such before trial." *Beasley*, 491 F.2d at 696; *see Wiley v. Sowders*, 647 F.2d 642 (6th Cir.), *cert. denied*, 454 U.S. 1091, 102 S.Ct. 656, 70 L.Ed.2d 630 (1981).

■ The decision of Martin's attorney not to participate cannot be considered "sound trial strategy" or "professionally competent assistance." Trial counsel stated before the District Court that he refused to participate in Martin's trial because he felt that participation would either waive pretrial motions or render their denial harmless error. Under Tennessee law, offering a defense at trial does not waive the right to assert on appeal errors such as the trial court's failure to grant a continuance or a dismissal for a speedy trial violation. *See, e.g., Wright v. State*, 218 Tenn. 610, 405 S.W.2d 177 (1966); *Brown v. State*, 553 S.W.2d 94 (Tenn.Crim.App.1977). Martin's attorney may have meant that he feared that if he mounted an adequate defense, an appellate court would find Martin had not been prejudiced and would be unwilling to reverse on the basis of the trial

court's denial of his motions to dismiss because of the delay in bringing the case to trial, or, alternatively, to continue because the defense was not prepared to go to trial.

This strategic reasoning, while superficially persuasive, led Martin's counsel to abandon all attempts to defend his client at trial in favor of reversal on appeal, an unreasonable tactic since the attorney was aware of a strong defense that he could present without compromising his earlier motions. While arguing his motion to dismiss or continue, Martin's attorney told the court that Martin had stated that he denied the charges against him. The attorney knew that Martin was willing to testify and had no criminal record. The only direct evidence against Martin was the testimony of his stepdaughters; if Martin had been called to testify the jury would have heard his denial and his theory that the girls were encouraged to falsify the incident,[1] and would have been able to judge the credibility of the defendants and of his stepdaughters in reaching a verdict. Instead of presenting this defense, which would have required no further preparation, and participating in the trial to hold the government to its burden of proof, Martin's trial counsel "stood mute," offering the jury virtually no option but to convict him, in spite of his plea of "not guilty."[2] *Cf. Wiley*, 647 F.2d at 650 (constitutional right not to plead guilty obliges attorney "to structure the trial of the case around his client's plea"). The Supreme Court in *Strickland* urged courts, in determining the effectiveness of counsel, to "keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." 104 S.Ct. at 2066. Judged by this goal, a trial strategy of refusing to participate is not an "exercise of reasonable professional judgment." *Id.*

Under *Strickland*, "actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Id.* at 2067. Ordinarily, prejudice is demonstrated by showing a reasonable probability that the outcome would have been different but for counsel's errors. In *United States v. Cronic*, —— U.S. ——, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984), decided the same day as *Strickland*, the Supreme Court recognized that some types of errors that deny a defendant effective assistance of counsel are so egregious that prejudice may be presumed:

> The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial. Similarly, if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable.

A footnote to this passage further observes, "The Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Id.* 104 S.Ct. at 2047 n. 25.

The failure of Martin's attorney to participate in the trial made the adversary process unreliable. Because his attorney refused to participate in any aspect of the trial, Martin was unable to subject the government's case against him to "the crucible of meaningful adversarial testing"— the essence of the right to effective assistance of counsel. *Id.* at 2045. The attorney's total lack of participation deprived Martin of effective assistance of counsel at trial as thoroughly as if he had been ab-

---

1. The witness he would have presented to establish this claim was present at the trial.

2. In a similar case involving ineffective assistance of counsel by an attorney who "stood mute" at trial, the appellate court reasoned, "[C]ounsel's mere presence in the courtroom may have prejudiced the defendant by the jury logically concluding that if counsel refused to participate, the client was so guilty, no defense was available." *State v. Lamoreaux*, 22 Ariz. App. 172, 525 P.2d 303, 305 (1974).

sent. This was constitutional error even without any showing of prejudice.

Martin has also shown that he was prejudiced by the omissions of his trial counsel under the analysis set out in *Strickland.* If his attorney had participated, Martin could have testified that he did not commit the crimes with which he was charged and believed that the girls had been induced to fabricate the story. Even if Martin had not testified, the girls' testimony could have been subjected to cross-examination or questioned in final argument. This creates a reasonable probability that, if Martin's attorney had participated, the result of the trial would have been different. We conclude that the failure of Martin's counsel to participate in his trial was a totally unreasonable trial tactic that prejudiced his case and therefore constituted ineffective assistance of counsel.

■ Martin is not entitled to a new trial if he waived his constitutional right to effective assistance of counsel. According to the testimony of Martin and his attorney, the attorney informed Martin that he would not participate in the trial and Martin did not object. In fact, Martin stated at the hearing of the motion for a new trial that he was satisfied with trial counsel's performance. We find, however, that this does not amount to waiver under the facts of this case.

■ Waiver of the right to assistance of counsel is evaluated according to the standards for waiving any constitutional right enunciated in *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). The right "may be waived only by voluntary and knowing action." *Boyd v. Dutton,* 405 U.S. 1, 2–3, 92 S.Ct.

759, 760–761, 30 L.Ed.2d 755 (1972); *see United States v. Reese,* 699 F.2d 803, 805 (6th Cir.1983). Although waiver may be implied and not express, "[t]he particular facts and circumstances of each case including the background, experience and conduct of the accused determine whether an intelligent waiver had been made." *Parshay v. Buchkoe,* 427 F.2d 978, 980 (6th Cir.1970). In the present case, Martin is illiterate and has a third-grade education. He had no previous experience in legal matters. Although he agreed to his counsel's plan, the attorney did not explain his reasons for refusing to participate or the possible consequences nor did the court explain to Martin the probable consequences of this strategy. Indeed, Martin continued to suggest that trial counsel act, *e.g.,* by cross-examining witnesses, during the trial. Under these circumstances, Martin's assent to the attorney cannot be deemed a knowing, intelligent waiver of his right to effective assistance of counsel.

Both the Tennessee Court of Criminal Appeals and the District Court below appeared concerned that if Martin's attorney is held to have rendered ineffective assistance of counsel, other attorneys will adopt the tactic of refusing to participate to obtain a new trial for their clients. No such scheme was involved in this case,[3] and we are unwilling to assume that members of the bar will cold-bloodedly adopt the bizarre and irresponsible strategem of abandoning clients at trial. If such a tactic develops, the trial court must respond, but it is not helpless before an attorney's threat to withdraw from participation in a trial. For example, the court can question the defendant to determine whether he understands the implications and conse-

---

**3.** The District Court stated that in this case "counsel carefully considered the possibility that petitioner, if convicted, would be able to receive a new trial if he did not participate during the first trial." *Martin v. Rose,* No. 82–3787–M, slip op. at 7 (M.D.Tenn. Apr. 28, 1983). No evidence supports this conclusion. In his testimony before the District Court, the attorney did not say that he chose not to participate to ensure Martin a second trial or to obtain further delay. He did admit that he had not expected to

go to trial on Monday, was not prepared, and did not think the trial judge would force him to go to trial unprepared. He refused a recess, however, and did not participate even after it became clear that the judge would allow the trial to proceed without his participation. There seems to be no reason to disbelieve his testimony that he failed to participate to avoid waiving his motions or rendering them harmless error.

quences of the attorney's proposed tactic and agrees to waive his right to effective assistance of counsel at trial. In other cases, the court's contempt power or the disciplinary mechanism of the bar may be appropriately invoked. *See State v. Lamoreaux*, 22 Ariz.App. 172, 525 P.2d 303, 306 (1974).

■ Lastly, Martin also argues that this Court should remand this case to the District Court for additional fact finding to determine whether his constitutional right to a speedy trial was violated by the nearly two-year delay between his indictment and trial. In determining whether a defendant has been deprived of his right to a speedy trial, courts attempt to balance four factors: length of delay, reason for delay, assertion of the right by the defendant, and prejudice to the defendant. *See Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972); *Cain v. Smith*, 686 F.2d 374, 380–85 (6th Cir.1982). Although this case involves a lengthy delay of almost two years, the other factors indicate no speedy trial violation. Martin concedes that he did not demand a speedy trial until five days before his trial. The Tennessee Court of Criminal Appeals found that Martin did not show that he was prejudiced by the delay. The state appellate court also found that Martin sought delay because he "was attempting to 'pressure' the District Attorney General to place him on pre-trial diversion." *Martin*, 634 S.W.2d at 643. Under 28 U.S.C. § 2254(d), a court of appeals in an action for a writ of habeas corpus is bound to apply a "presumption of correctness" to the factual findings of a state appellate court. *See Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). Given these findings, the *Barker* factors show that on balance Martin's right to a speedy trial was not violated, despite the delay.

We do hold that Martin's right to effective assistance of counsel was violated, however. Accordingly, the judgment of the District Court is reversed and the case is remanded to the District Court with instructions to issue the writ of habeas cor-

pus unless the State of Tennessee promptly grants Martin a new trial.