774 F.2d 1163
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Richard Howard Love, Plaintiff-Appellant,
v.
United States of America, Defendant-Appellee.
 No. 84-5862
 United States Court of Appeals, Sixth Circuit.
 9/11/85
 
 M.D.Tenn.
 AFFIRMED
 On Appeal From the United States District Court for the Middle District of Tennessee
 BEFORE: KEITH and MERRITT, Circuit Judges, and DOWD*.
 PER CURIAM:
 
 
 1
 Plaintiff-appellant, Richard Howard Love, appeals from an order of July 31, 1984 issued by the United States District Court for the Middle District of Tennessee, dismissing appellant's motion to vacate his sentence without a hearing under 28 U.S.C. Sec. 2255. Appellant was found guilty by a jury of conspiracy to transport, receive, and sell stolen beer across interstate commerce in violation of 18 U.S.C Sec. 371. Appellant claims that he was denied effective assistance of counsel because (1) counsel was indicted between the first and second trials, (2) certain documents were not introduced at the second trial, (3) counsel made no closing argument, and (4) there was a conflict of interest in joint representation of appellant and a codefendant. For the reasons set forth below, we affirm the conviction.
 
 I.
 FACTS
 
 2
 Richard H. Love was employed by Anheuser-Busch in St. Louis, Missouri as a loader of beer. On April 11, 1980, he was indicted by a federal grand jury in the Middle District of Tennessee. Trial before a jury was held on June 10, 1980. However, on July 1, 1980, a mistrial was declared.
 
 
 3
 Before retrial, the government advised the court that a possible conflict of interest existed because Love and a codefendant, James Wheeler, were represented by the same attorneys. The court questioned both defendants about the conflict and specifically advised them of the risk they ran. Mr. Love stated in open court that he clearly understood the conflict and the trial proceeded.
 
 
 4
 The first witness for the government was Mr. Calvin 'Catfish' Lankford. Mr. Lankford testified that in the summer of 1979 Wheeler advised him that the next time he had a trip going to St. Louis to pick up beer from the Anheuser-Busch plant, he should get in touch with him. Wheeler also stated to Lankford that he would put him in contact with an individual named Richared Love who worked at the Anheuser-Busch factory in St. Louis. Wheeler then gave Lankford appellant Love's telephone number in St. Louis. Lankford testified that on the way to St. Louis he called Love and gave him the order number and where he would be delivering beer. When Lankford arrived at the loading dock at the Anheuser-Busch plant in St. Louis, Love loaded the truck, placing two extra pallets, consisting of twelve ounce cans of Budweiser beer, on the trailer. Love then told Lankford that he would inform Wheeler of the load. Lankford then drove the truck to Cookesville, Tennessee where he unloaded the two pallets of beer into a block building at Wheeler's residence.
 
 
 5
 Lankford made a second trip to St. Louis that fall. He called Richard Love and gave him his order number and his destination before arriving in St. Louis. Love again loaded Lankford's truck with two extra pallets of beer. Lankford delivered the two pallets to Wheeler's house in Tennessee and again unloaded the beer into the block building.
 
 
 6
 Lankford testified that on or about December 20, 1979 he had a third transaction with Wheeler and Love. This time, Love loaded Lankford's truck with six extra pallets of Budweiser, two pallets of Busch, and two pallets of Lite Beer. Lankford then drove his truck to Wheeler's house where he left it. The following morning Lankford received a telephone call from Wheeler who told him that he had not been able to get rid of the beer and asked Lankford if he thought he could get rid of it for him. Lankford then enlisted the help of defendants Enoch and Allmond. On December 23, 1979, Lankford was caught loading the stolen Anheuser-Busch beer from his truck to the truck of Mr. Allmond on Highway 70 in Tennessee. There were approximately 600 cases of beer in the process of being unloaded.
 
 
 7
 The government also called witnesses from various telephone companies. These witnesses introduced telephone records which showed long distance calls billed to appellant Love's number in St. Louis, Missouri from April 1979 through May 1980 and toll records from Wheeler's telephone number in Tennessee from July 1979 through December 1979. The records reflected 20 calls between appellant Love and Wheeler from July through December. These records were introduced into evidence.
 
 
 8
 Finally, the government called Mr. Kenneth Rathert, Manager of Warehousing and Shipping for Anheuser-Busch for the preceeding fourteen years. Mr. Rathert testified that from his experience as a loader, it would have been very easy to load six extra pallets of beer on Mr. Lankford's truck. He also stated that both Mr. Wheeler's truck and Mr. Lankford's truck were loaded by the appellant during the December 21-23, 1979 weekend. Rathert then explained to the jury the coding system used on beer cases which indicated when the beer was manufactured. He also told the jury the date of manufacture represented by each of the code numbers on the cases of beer taken from Lankford's trailer. These dates of manufacture matched those of the beer loaded by the defendants.
 
 
 9
 After the government rested, the defendant denied stealing beer, selling stolen beer or knowingly receiving stolen beer. Appellant was convicted of conspiracy to transport, receive, and sell stolen beer in interstate commerce in violation of 18 U.S.C. Sec. 371. After appellant's motion to vacate his sentence was denied without a hearing, Mr. Love filed a timely appeal to this Court.
 
 II.
 EFFECTIVE ASSISTANCE OF COUNSEL
 
 10
 Appellant alleges that he was denied effective assistance of counsel because (1) counsel was indicted between the first and second trials, (2) certain documents were not introduced at the second trial, (3) petitioner's counsel made no closing argument, and (4) there was a conflict of interest in joint representation.
 
 
 11
 The Supreme Court in Strickland v. Washington, 104 S.Ct. 2052 (1984) set out a two-prong test for evaluating claims alleging ineffective assistance of counsel. In Strickland the court stated:
 
 
 12
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
 
 
 13
 104 S.Ct. at 2064.
 
 
 14
 The Supreme Court instructs reviewing courts to indulge a strong presumption that counsel was acting competently, and that the challenged actions were part of a sound strategy. 104 S.Ct. 2065-66. The court further directs a reviewing court to measure the adequacy of each challenged instance of trial counsel's conduct against prevailing norms at the time of the action. 104 S.Ct. at 2065. Thus, a convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.
 
 
 15
 This Court has adopted criteria similar to those used by the Supreme Court in Strickland. In Beasley v. United States, 491 F.2d 687, 697 (6th Cir. 1974), this Court stated:
 
 
 16
 We hold that the assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest undeflected by conflicting considerations.'
 
 
 17
 491 F.2d at 697. This Court reiterated the Beasley standard for effective assistance of counsel in Wiley v. Sowders, F.2d 642, 648 (6th Cir.), cert. denied, 454 U.S. 1091 (1981). Applying the Beasley test, the Wiley court stated that it should not second guess counsel's judgment and trial strategy and that an attorney should be free from undue intervention to choose his course of litigation.
 
 
 18
 This Court most recently discussed its standard for determining effective assistance of counsel in Martin v. Rose, 744 F.2d 1245, 1248, 1249 (6th Cir. 1984). In Martin, the court reiterated that the competence of defense strategy and tactics be considered in light of norms held by lawyers of ordinary training and intelligence. The court also stated that '[o]rdinary prejudice is demonstrated by showing a reasonable probability that the outcome would have been different but for counsel's errors.' 744 F.2d at 1250.
 
 
 19
 In the present case, appellant has not met the test for claims alleging ineffective assistance of counsel. Appellant has not shown counsel performance was deficient, or that counsel's performance prejudiced petitioner. Moreover, appellant has not shown that the petitioner's interest were not protected or that the outcome of his trial would have been different.
 
 A. Conflict of Interest
 
 20
 Appellant first claimed he received ineffective assistance because trial counsel's joint representation of him and of a co-defendant indicates a conflict of interest. We do not agree. The Supreme Court has held that permitting a trial counsel's joint representation of co-defendants is not per se violative of the Sixth Amendment right to effective assistance of counsel. Holloway v. Arkansas, 435 U.S. 475, 482 (1978). The Supreme Court has also held if a defendant does not raise the conflict issue at trial, '[i]n order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance.' Cuyler v. Sullivan, 446 U.S. 335, 350 (1980).
 
 
 21
 In the instant case, the government filed a motion advising the court that there was a conflict because of joint representation. The district court held a hearing at the inception of trial pursuant to Rule 44(c) of the Federal Rules of Criminal Procedure. The court advised the appellant and trial counsel's other client that a conflict of interest could arise if the same attorney represented them both. Although appellant responded that he clearly understood the possible conflict, he waived the conflict of interest in open court.
 
 
 22
 Appellant has not clearly shown that his counsel represented conflicting interests adversely affected counsel's performance. Thus, appellant's Sixth Amendment rights have not been violated.
 
 B. Counsel's Indictment
 
 23
 Appellant next argues that he received ineffective assistance of counsel because of the criminal problems of his trial attorney, Mr. Reneau. Between the time of appellant's first and second trials, the government filed a two-count information against Mr. Reneau for a misdemeanor violation of Internal Revenue Code for willful failure to file income tax returns. However, appellant has failed to show the relevance between the information filed against one of his trial counsel and the incompetence of counsel claim. Moreover, there has been no showing that this trial counsel's performance was in any way affected by the misdemeanor violation.
 
 
 24
 The appellant contends that under Briguglio v. United States, 675 F.2d 81 (3rd. Cir. 1982), this Court is required to find trial counsel's performance ineffective. We do not agree. In Briguglio, petitioner's counsel was under investigation during defendant's trial by the same United States Attorney's Office that was prosecuting the case against defendant. There, the United States Attorney's Office would not discuss a plea agreement while Briguglio's counsel was under investigation. Thus, the Third Circuit was especially concerned that this inability to plea bargain raised a clear possibility of 'actual conflict' requiring an evidentiary hearing. The Briguglio court did not hold that trial counsel's conviction of a crime within the judicial district, alone, warranted a hearing, but rather, it held that defendant Briguglio should be afforded a hearing to consider whether counsel's pending legal difficulties affected his representation and to consider counsel's inability to plea bargain. Therefore, the Court remanded the case for hearing.
 
 
 25
 The present case is distinguishable from Briguglio. Here, the investigation of appellant's counsel had been completed before the trial. Counsel also was not impaired from plea bargaining for the petitioner. In addition, Mr. Love was represented by Mr. Fann who fully participated as co-counsel with Mr. Reneau. His participation in the entire case as co-counsel insured that Mr. Reneau's judgments were proper. Mr. Love made no attacks on Mr. Fann concerning this issue. Thus, appellant has failed to show how counsel's criminal problems in any way affected his representation.
 
 C. Waiver of Closing Argument
 
 26
 Appellant next asserts that he was denied effective assistance of counsel because his trial counsel waived closing argument. However, the record indicates that appellant was advised of the effect of waiving closing argument and chose that course by signing a waiver stating he had discussed the matter with his attorney. Moreover, appellant reiterated his decision when he was questioned during the course of trial regarding the waiver:
 
 
 27
 THE COURT: Do you agree for your lawyer to waive the argument in this case?
 
 
 28
 MR. LOVE: Yes, sir.
 
 
 29
 By waiving the closing argument, counsel precluded a potentially damaging rebuttal by the prosecutor. This tactic was part of a 'sound trial strategy' and one with which the appellant and all of the other defendants agreed. Since appellant offers no evidence showing the outcome of the trial would have been any different if trial counsel had presented a closing argument, counsel's decision was 'reasonable professional judgment.' Thus, counsel's decision to waive closing argument did not prejudice the defendant where the defendant joined in the decision.
 
 D. The Documents
 
 30
 Appellant's final argument is that he was denied effective assistance of counsel because his attorney did not introduce the 'Code Card' or settlement sheets at the second trial. Under Strickland, appellant must show counsel's performance was deficient and that it prejudiced the defendant.
 
 
 31
 The 'Code Card' indicated that the beer was manufactured by Anheuser-Busch in Missouri. The government presented evidence that the beer recovered in Cookesville, Tennessee could have been loaded by Mr. Love. The Code Card and settlement sheets could not have refuted this evidence and their introduction would only have highlighted the fact that petitioner could have loaded the stolen beer. Since appellant has not shown that counsel's decision not to introduce the documents was deficient or that it prejudiced him, counsel's performance was effective under the Sixth Amendment.
 
 III.
 DISMISSAL OF PETITION WITHOUT HEARING
 
 32
 The district judge dismissed appellant's petition for vacating of sentence without a hearing. This decision should not be disturbed absent abuse of discretion. 28 U.S.C. Sec. 2255 states, in part:
 
 
 33
 Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.
 
 
 34
 Under the rules governing Section 2255 proceedings in the United States District Courts, a district judge can summarily dismiss a motion without a hearing if it is clear from the record and face of the motion that defendant is not entitled to relief. Rule 4(b). A motion for summary judgment need not be filed, but the judge may order the U.S. Attorney to file an answer, which was ordered and filed in this case. The district judge considered the petition, the response, the files and record of the case and determined that there was no assertion which would require an evidentiary hearing.
 
 
 35
 Appellant seeks to have dismissal of the petition overturned based on Blackledge v. Allison, 431 U.S. 63 (1977). In Blackledge the 2255 petition was backed with specific factual allegations. Based on this and the fact that the defendant had plead guilty under a then questionable North Carolina procedure, the Supreme Court found that defendant's petition should not have been summarily dismissed. 431 U.S. at 75, 76. The court held that the district judge should employ the measures provided in the Rules Governing Habeas Corpus Cases, 28 U.S.C.A. (1977 Supp).
 
 
 36
 The case at bar does not involve either a guilty plea nor questionable state court procedure. The record shows the judge did employ the Rules in determining that a hearing was not necessary. The judge who presided over both trials, who had personally advised the petitioner about the conflict and about his waiver of argument, was fully able to evaluate the claims and rule on them based on the record.
 
 
 37
 Accordingly, there is no indication that the district court abused its discretion in this matter, therefore, the decision of Judge Morton is hereby affirmed.
 
 
 
 *
 Honorable David D. Dowd, Jr., United States District Court for the Northern District of Ohio, sitting by designation