[Cite as *State v. Mick*, 2018-Ohio-999.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio                                    Court of Appeals Nos. E-16-073

       Appellee                         Trial Court Nos.  2014-CR-196

v.

Richard C. Mick                            **DECISION AND JUDGMENT**

       Appellant                        Decided:  March 16, 2018

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Aaron T. Lindsey and Pamela A. Gross, Assistant Prosecuting
Attorneys, for appellee.

Russell S. Bensing, for appellant.

* * * * *

**OSOWIK, J.**

### Introduction

{¶ 1} This is an appeal from an Erie County Court of Common Pleas' judgment of

conviction and sentence.  A jury found Richard Mick, defendant below and appellant

herein, guilty of two counts of gross sexual imposition and two counts of rape. The trial court sentenced Mick to serve a mandatory life sentence in prison.

{¶ 2} On appeal, Mick asserts several errors, including that he was denied effective assistance of trial counsel when his counsel refused to participate in any phase of his trial. Because we find that Mick was denied his constitutional right to effective representation, and because Mick did not waive that right, we reverse his conviction and remand for a new trial.

### Facts and Procedural History

{¶ 3} On May 14, 2014, the Erie County Grand Jury indicted Mick of two counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4), a third degree felony and two counts of rape, in violation of R.C. 2907.02(A)(1)(b), a first degree felony. The victim identified in Counts 1 and 2 was "L.S."; the victim identified in Counts 3 and 4 was "E.M." Both victims were less than 13 years of age at the time of the alleged crimes. Mick had served as the reverend of the Lighthouse Baptist Church in Sandusky, Ohio, and both victims had attended church there.

{¶ 4} Initially, Mick acted pro se, but within six weeks of his indictment, he was represented by the Erie County Public Defender's Office. Through counsel, Mick filed a motion to hire Terrence Campbell, Ph.D., an expert witness, at state expense. The trial court granted the motion.

{¶ 5} Eighteen months after his indictment, Mick fired his state-appointed attorney and hired, at his own expense, attorney K. Ronald Bailey. Bailey filed a notice of substitution of counsel on October 28, 2015. Over the course of the next year, Attorney

2.

Bailey filed a number of motions, including two motions to dismiss the case, two motions in limine, a motion to recuse the trial judge, and five motions to continue the trial date. Two of the motions to continue were granted; three were denied, including one filed the day before the October 4, 2016 trial.

{¶ 6} Mick also filed a motion to substitute Dr. Campbell, who had since died, at state expense. By order dated May 13, 2016, the trial court denied the motion for the reason that Mick "was not indigent for purposes of securing funds from the government to retain a substitute expert." Mick sought reconsideration of the order, which the trial court denied on May 27, 2016. Mick filed a second motion for reconsideration, which the trial court denied on the morning of trial, October 4, 2016.

{¶ 7} On the morning of trial, as voir dire was set to begin, Mick's attorney announced that he "cannot and will not be able nor willing to proceed today." He cited five reasons: (1) his own failure to secure his private investigator to testify at trial; (2) his client's poor health; (3) inadequate time (five days) to review the jury questionnaires, (4) his own mental and physical fatigue due to "travelling approximately 4,000 miles in four days" before trial; and (5) the trial court's denial of additional funding for an expert witness. Mick's attorney suggested that the trial court declare a mistrial, based on his own refusal to participate in the proceedings.

{¶ 8} Jury selection continued throughout the day on October 4, 2016. Despite being instructed to participate or risk being held in contempt, Attorney, K. Ronald Bailey refused to question any potential jurors or exercise any peremptory challenges. When

3.

jury selection was complete, Attorney Kenneth Bailey filed a notice of appearance in the case, with Mick's approval. Kenneth Bailey is K. Ronald Bailey's son.

{¶ 9} Also on October 4, 2016, Mick, acting through counsel, appealed the trial court's denial of the second motion for reconsideration (regarding his motion to substitute his expert witness). The next day, we dismissed the appeal, finding that the trial court's judgment entry was not a final appealable order under R.C. 2505.02. *State v. Mick,* 6th Dist. Erie No. E-16-062 (Oct. 5, 2016).

{¶ 10} Trial resumed on October 5, 2016. Again, the trial court instructed Attorney K. Ronald Bailey to participate or face contempt of court, and again he refused. The following is a synopsis of all six witnesses who testified at trial. When presented with the opportunity to cross examine each witness, K. Ronald Bailey asserted a variation of the following: "I cannot be effective and I'm not participating." Kenneth Bailey did not speak.

{¶ 11} L.S., who was 22 at the time of trial, testified first. L.S. attended Reverend Mick's church as a boy. L.S. testified that on three or four occasions, between 2003 and 2005, when he was between the ages of eight and ten years old, Mick led him into a church bathroom, ostensibly so that Mick could "check [him] for rashes." As a young boy, L.S. had a weak bladder and would occasionally wet himself. On those three of four occasions, Mick put his hands down L.S.'s pants and rubbed L.S.'s buttocks and scrotum. Each incident lasted about four or five minutes. L.S. did not believe that Mick had a legitimate purpose to examine him because L.S. "never once had a rash and it doesn't

4.

take that long to check for a rash." Years later, in 2012, when he was 18, L.S.'s mother "randomly" asked him "if anything at all had happened to him" at church. At first, L.S. denied that Mick had ever touched him inappropriately because he was embarrassed and didn't think she would believe him. After consulting with a reverend from another church, Rev. Jerald Fenske, L.S. reported Mick's abuse to her. Fenske also testified that the two discussed whether L.S. should report the abuse to his mother.

{¶ 12} The other victim, E.M., attended Mick's church as a young girl. E.M. described three separate incidents. The first occurred in the fall of 1999 when she was five years old. E.M. testified that Mick took her to a church office and put his fingers inside her vagina. During a second incident, when she was five or six years old, Mick "put his penis in [her] mouth very forcibly" for what "felt like an eternity," causing her to feel as though she was going to "choke." A third incident occurred sometime between 2000-2002, when she between the ages of six and eight. E.M. testified that she walked outside of the church at night toward a nearby overpass, when Mick "came out and pinned me on my back by my wrists and tried to penetrate me, but couldn't." She explained that the tip of Mick's penis penetrated her vagina which "felt like [she] was being ripped apart and the world stopped spinning." In 2012, E.M. told her then-boyfriend, now husband, what had occurred and then told her parents and the police.

{¶ 13} The state called two additional witnesses pursuant to Evid.R. 404(B). The first was Mick's daughter, R.O. R.O. described two incidents of vaginal rape by her father, the first when she was 13 and the other when she was 14 or 15. E.S., a boy, also testified. E.S. had attended Mick's church as a youngster. Between 2006 and 2010,

5.

when E.S. was between the ages of five and nine, he described how Mick would take him into his office, lock the door, and with his (Mick's) hands, grope E.S.'s chest, back, thighs, groin, and buttocks.

{¶ 14} Sandusky Police Detective Ken Nixon testified that there was no physical evidence linking Mick to the crimes because "all these alleg[ed incidents] happened behind closed doors * * * ten, 15 years ago, so there's nothing to collect. There's no evidence to collect."

{¶ 15} The jury found Mick guilty of all four counts set forth in the indictment. It also found, with regard to the first two counts, that L.S. was less than 13 years of age at the time of the offenses, and with regard to counts three and four, that E.M. was less than ten years of age at the time of the offenses. With respect to E.M., the jury found that Mick compelled her to submit by force, or threat of force. The trial court imposed a five year sentence as to Counts 1 and 2, to be served concurrently, and a life sentence as to Counts 3 and 4, to be served concurrently, but consecutively to Counts 1 and 2. Through appointed appellate counsel, Mick appealed and raises the following assignments of error.[1]

---

[1] A contempt proceeding was held following the trial. The court found that K. Ronald Bailey had "impeded, embarrassed and obstructed [the] Court in the performance of its function" and imposed sanctions of 30 days in jail, a $250 fine and court costs. We upheld the imposition of sanctions on December 8, 2017. *State v. Mick,* 6th Dist. Erie No. E-16-074, 2017-Ohio-8922.

Assignment of Error No.1:  The Defendant was denied his right to the effective assistance of counsel, in violation of his rights as protected by the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.

Assignment of Error No. 2:  The trial court erred and abused its discretion in failing to sua sponte declare a mistrial, or grant the Defendant's Motion for Mistrial.

Assignment of Error No. 3:  The trial court erred and abused its discretion in denying Defendant's Motion for Expert Witness Fees.

Assignment of Error No. 4:  The trial court erred and abused its discretion in admitting evidence of prior acts of Defendant under Evid.R. 404(B).

{¶ 16} In his first assignment of error, Mick asserts that he was denied his constitutional right to counsel by virtue of his attorneys' refusal to participate during trial.

{¶ 17} "The Sixth Amendment, applicable to the States by the terms of the Fourteenth Amendment, provides that the accused shall have the assistance of counsel in all criminal prosecutions.  The right to counsel is the right to *effective* assistance of counsel." (Emphasis added.)  *Missouri v. Frye*, 566 U.S. 134, 132 S.Ct. 1399, 1404, 182 L.Ed.2d 379 (2012); *see also* Article I, Section 10 of the Ohio Constitution.  To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) deficient performance by counsel, i.e., performance falling below an objective standard

7.

of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 18} When challenging counsel's trial strategy through an ineffective assistance claim on appeal, "the appellant must overcome the 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *'" *State v. Lawson,* 64 Ohio St.3d 336, 341, 595 N.E.2d 902 (1992), quoting *Strickland* at 689. "Debatable trial tactics generally do not constitute a deprivation of effective counsel." *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995).

{¶ 19} In this case, the state argues that the decision by Mick's attorneys not to participate at trial was a deliberate attempt to cause the court to declare a mistrial. Indeed, the transcript leaves no room for doubt that this was indeed their motive. Moreover, counsel actively defended Mick prior to, and even during the trial, albeit outside the presence of the jury. Thus, while we agree with the state, even deliberate trial tactics may constitute ineffective assistance of counsel if they fall "outside the wide range of professionally competent assistance." *Strickland* at 689. A trial strategy consisting of a refusal to participate has been found to be objectively unreasonable. *Martin v. Rose*, 744 F.2d 1245, 1250 (6th Cir.1984), citing *Strickland.*

{¶ 20} The state also argues that Mick cannot show that he was prejudiced by his counsel's strategy, due to the "insurmountable amount of evidence that pointed to the fact

8.

that Mr. Mick had indeed committed the offenses of which he was ultimately convicted." We decline to characterize the evidence in this case, except to note that the only direct evidence against Mick was the testimony of the alleged victims, who were testifying years after the abuse allegedly occurred. Counsel's failure to test the prosecution's case left the jury with "no option but to convict." *Martin* at 1250.

{¶ 21} In most cases, a defendant's failure to satisfy either part of the test set forth in *Strickland* (deficient performance plus prejudice) is fatal to an ineffective assistance claim. *Strickland* at 697; *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989). *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), presents an exception to that rule, however. In *Cronic,* decided the same day as *Strickland,* the United States Supreme Court "recognized that some circumstances are so likely to prejudice the defendant that no showing of prejudice is necessary." *See State v. Sanders*, 92 Ohio St.3d 245, 277, 750 N.E.2d 90 (2001). These circumstances include (1) the complete denial of counsel at a critical stage of the trial; (2) the complete failure of counsel to subject the prosecution's case to meaningful adversarial testing; (3) counsel's active representation of conflicting interests; and (4) where defense counsel was appointed only a few minutes before trial commenced. *Sanders* at 277, citing *Cronic* at 659-661. A defendant who claims that his counsel failed to subject the prosecution's case to meaningful adversarial testing must establish that the failure is complete. *Bell v. Cone*, 535 U.S. 685, 696-697, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) ("When we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test

9.

the prosecutor's case, we indicated that the attorney's failure must be complete. We said 'if counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing.'") (Emphasis in original).

{¶ 22} The facts of *Martin v. Rose*, 744 F.2d 1245 are remarkably similar to the case before us. In *Martin,* the defendant was convicted of several sex offenses against his stepdaughters. His conviction was upheld in the state court, and he filed a writ of habeas corpus in federal court, claiming, among other arguments, that he was denied effective assistance of counsel. The record demonstrated that, in the nearly two years that preceded the trial, the defendant's attorney was actively involved in representing his client. As here, however, when the court denied the defendant's last minute motion for a continuance, a motion to dismiss, and a motion to certify an interlocutory appeal, the attorney announced that he would not participate in the trial. The attorney then "stood mute" for the entire length of trial. The defendant was found guilty and sentenced to life in prison. The Sixth Circuit found,

> The failure of [the defendant's] attorney to participate in the trial made the adversary process unreliable. Because his attorney refused to participate in any aspect of the trial, [the defendant] was unable to subject the government's case against him to "the crucible of meaningful adversarial testing" -- the essence of the right to effective assistance of counsel. *Cronic* at 2045. The attorney's total lack of participation deprived [the defendant] of effective assistance of counsel at trial as thoroughly as if

he had been absent.  This was constitutional error even without any showing of prejudice.  *Martin* at 1250-1251, quoting *Cronic* at 2045.

{¶ 23} We agree with Mick that the cumulative effect of his counsel's decision *not* to conduct voir dire, to make an opening statement or closing argument, to cross examine any of the state's witnesses, to call any witnesses or offer any evidence on behalf of Mick, or to proffer jury instructions amounts to a complete failure to test the prosecution's case.  Therefore, the narrow exception set forth in *Cronic* applies.  Counsel's abandonment of their client throughout the most critical phase of the government's case against Mick deprived him of his constitutionally protected right to counsel.  Mick need not show that he was prejudiced by his counsel's representation.

{¶ 24} Moreover, although Mick could have waived his constitutional right to counsel, the record shows that he did not.  A criminal defendant has a constitutional right to waive counsel and to represent himself.  *Faretta v. California*, 422 U.S. 806, 819, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).  In order to ensure that a waiver of counsel is made knowingly, intelligently and voluntarily, the trial court must make sufficient inquiry to determine whether a defendant fully understands and intelligently relinquishes that right.  *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144.

> To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not

automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.  (Citations omitted.)  *State v. Albert*, 2d Dist. Montgomery No. 23148, 2010-Ohio-110, ¶ 12, quoting *Von Moltke v. Gillies,* 332 U.S. 708, 723-724, 68 S.Ct. 316, 92 L.Ed. 309.

**{¶ 25}** Though the record discloses no discord between Mick and his counsel over their decision to abandon him during trial, there is no evidence of waiver.  In fact, the trial court expressed its reluctance to question Mick directly on the subject, for fear of violating his attorney-client privilege and/or risking another motion to recuse.  As explained above, however, the court could, and should, have questioned Mick to ascertain whether he understood the implications and consequences of his attorneys' strategy to cause a mistrial.  Any concern that counsel might seek to have the judge recuse himself must be secondary to Mick's constitutional right to counsel.  We find that Mick did not waive that right.

**{¶ 26}** Mick's first assignment of error is well-taken.  In light of this court's decision with regard to the first assignment of error, we find that the remaining

12.

assignments of error are moot, and we decline to address them.  App.R. 12.  The

judgment of conviction and sentence of the Erie County Court of Common Pleas is

reversed, and the matter is remanded for new trial.  Appellee is ordered to pay the costs of

this appeal pursuant to App.R. 24.

                                                                    Judgment reversed.


        A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.                       _____
                                                              JUDGE
Arlene Singer, J.

                                               _____
Thomas J. Osowik, J.                                          JUDGE
CONCUR.

                                               _____
                                                              JUDGE