[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Erie-Huron Cty. Bar Assn. v. Bailey and Bailey*, Slip Opinion No. 2020-Ohio-3701.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-3701

ERIE-HURON COUNTY BAR ASSOCIATION *v.* BAILEY AND BAILEY.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Erie-Huron Cty. Bar Assn. v. Bailey and Bailey*, Slip Opinion No. 2020-Ohio-3701.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—One-year suspension with six months conditionally stayed (Kenneth Ronald Bailey)—Public reprimand (Kenneth Richard Bailey).*

(No. 2019-1363—Submitted April 7, 2020—Decided July 16, 2020.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2019-003.

_____

**Per Curiam.**

{¶ 1} Respondents, Kenneth Ronald Bailey ("Bailey"), Attorney Registration No. 0009637, and his son Kenneth Richard Bailey ("Kenneth"), Attorney Registration No. 0090042, both of Sandusky, Ohio, were admitted to the

practice of law in Ohio in 1983 and 2013, respectively. At all times relevant to this disciplinary proceeding, Kenneth worked as an associate at Bailey's law firm.

{¶ 2} In a January 28, 2019 complaint, relator, Erie-Huron County Bar Association, alleged that Bailey violated the Rules of Professional Conduct when, soon after proceedings began in a client's criminal trial, he refused to participate after failing to obtain a continuance. In a separate complaint filed the same day and amended in March 2019, relator charged Kenneth with professional misconduct relating to his posttrial Facebook posts falsely impugning the integrity of the trial-court judge.

{¶ 3} The parties submitted some stipulations of fact, and the matter proceeded to a hearing before a three-member panel of the Board of Professional Conduct. Following that hearing, the panel issued an order unanimously dismissing some of the charged misconduct. The panel later found that Bailey committed three of the seven remaining charges against him, and it recommended that we suspend him from the practice of law for one year with six months stayed. The panel also found that Kenneth's conduct constituted a single rule violation and recommended that he be publicly reprimanded. The board issued a report adopting the panel's findings of fact and misconduct with respect to both respondents and its recommended sanction for Kenneth. But it recommends that Bailey be suspended from the practice of law for two years with one year stayed on the condition that he engage in no further misconduct.

{¶ 4} Kenneth has not objected to the board's report or recommendation. Bailey, however, objects to an evidentiary ruling made by the panel, the board's findings of misconduct and aggravating factors, and the board's recommended sanction. After independently reviewing the record, we adopt the board's findings of misconduct and its recommendation with respect to Kenneth. We overrule Bailey's first three objections, sustain his fourth objection in part, adopt

2

the board's findings of his misconduct, and suspend Bailey from the practice of law for one year with six months conditionally stayed.

**Bailey's Misconduct**

{¶ 5} Richard Mick was charged in a May 2014 indictment with two counts of gross sexual imposition and two counts of rape of a child under the age of 13. Because Mick was indigent, the trial court appointed a public defender to represent him and a psychologist to serve as a defense expert.

{¶ 6} In October 2015, Mick discharged his appointed counsel and hired Bailey to represent him. The court continued the trial until May 31, 2016, to allow Bailey time to prepare. In January 2016, Bailey asked the court to appoint a new defense expert, Jolie Brams, Ph.D., because the previously appointed expert had died. The court denied the motion because Mick no longer met the standards for indigency. The court also denied Bailey's motion to reconsider that decision.

{¶ 7} In May 2016, the court granted the state's motion to present Evid.R. 404(B) "similar acts" testimony that Mick sexually abused his minor daughter. After the court's Evid.R. 404(B) ruling, the state disclosed to Mick a 2013 report from psychologist Eric Ostrov, Ph.D., who had been identified as the state's expert in a 2012 case involving the alleged abuse against Mick's daughter. In the report, Dr. Ostrov questioned the validity of the daughter's repressed-memory testimony. (After receiving Dr. Ostrov's report in 2013, the prosecutor dismissed the sexual-abuse charges against Mick without prejudice.)

{¶ 8} After reviewing that report, Bailey conferred with Dr. Ostrov by telephone, drafted a subpoena for his appearance at trial, and sent him an e-mail concerning the cost of his testimony and his willingness to accept a subpoena.

{¶ 9} Four days before the May 31 scheduled trial date, Bailey filed a motion for a continuance on the grounds that Ostrov would not have sufficient time to complete a written report and was unavailable to testify. The court granted the motion and rescheduled the trial for October 4, 2016.

{¶ 10} Three days later, Bailey again moved for a continuance, explaining that he would be traveling to Las Vegas for his son's wedding the weekend before October 4. After the court denied that request, he filed a motion to advance the trial date so that it would occur before his trip. Bailey informed the court that Dr. Ostrov was available to testify any Monday in September. The court again denied a continuance.

{¶ 11} The court ordered the defense to make Mick's expert-witness report available to the state no later than August 10. Dr. Ostrov sent his new report to Bailey on August 3, and Bailey timely provided it to the prosecutor. But although Dr. Ostrov's 2013 report and his new report both contained material favorable to Mick, Bailey continued to argue that Dr. Ostrov was the state's expert witness—not Mick's.

{¶ 12} On August 10, Bailey filed a second motion for reconsideration of the court's entry denying his motion to appoint Dr. Brams as the defense's expert. And one week before trial was scheduled to begin, Bailey filed another motion for a continuance, arguing that he needed more time to investigate a witness the state had not identified until August. The court denied the motion for a continuance but did not rule on the second motion for reconsideration prior to trial.

{¶ 13} At that point, Bailey decided on a new strategy—he would refuse to participate in the trial on the grounds that the court's refusal to appoint Dr. Brams and to continue the trial were of such constitutional magnitude that they prevented Mick from receiving a fair trial. It appears that Bailey believed that that strategy would require the court to continue the trial to reconsider its prior rulings, stay the trial, or declare a mistrial.

{¶ 14} The day before trial, Bailey filed yet another motion for a continuance, this time alleging that (1) his client had been hospitalized over the weekend, (2) Bailey had been out of state for the previous four days to attend his son's wedding and did not receive the juror questionnaires before his departure,

(3) the court had not held an evidentiary hearing on his second motion for reconsideration of the appointment of Dr. Brams, and (4) he had not had the opportunity to have an investigator interview a prosecution witness. Although the court issued a detailed order denying the motion later that day, Bailey instructed Dr. Ostrov not to appear for trial.

{¶ 15} On the day of the trial, Bailey appeared in court with Mick, Kenneth, and a lawyer retained by Bailey to counsel him regarding his decision not to participate in the proceedings. Bailey said nothing about his refusal to participate in the trial until he was at a sidebar in the open courtroom in the presence of the jury venire. He then announced, "[I] cannot and will not be able nor willing to proceed today."

{¶ 16} At a bench conference, he reiterated many of the reasons set forth in his most recent motion for a continuance and added that he was exhausted, having traveled 4,000 miles in the four days preceding the trial. In response, the judge first noted that he had already ruled on the motion, then twice told Bailey, "[Y]ou may step back," but Bailey refused and continued to argue his point each time. The judge directed Bailey for a third time to step away from the bench, and Bailey replied, "I may, but I won't" and kept talking. After ordering that the prospective jurors be removed from the courtroom, the judge cautioned Bailey that he would be sanctioned for direct contempt if his behavior continued.

{¶ 17} Once the prospective jurors returned, Bailey asked about the status of his second motion for reconsideration of the court's denial of his motion to appoint Dr. Brams as a defense expert. The judge orally denied the motion, and the state proceeded with voir dire.[1] Bailey continued to refuse to participate in the trial, stating, "[I]t would not be proper or Constitutionally proper for us to

---

1. Bailey appealed the trial court's denial of the motion for reconsideration that afternoon, but the appeal was dismissed for lack of a final, appealable order.

participate in this matter for all the reasons we've previously stated." The judge responded:

> The Court is ordering you to proceed. If you choose not to, then the Court will have contempt proceedings, but your—your basis is already on the record. It's protected. Your client's rights are protected because it's on the record. I'm just asking you to proceed with the trial now. And if you say no questions, that's fine. If you ask questions, that's fine. Just proceed in some manner.

{¶ 18} Bailey refused to proceed or participate in any phase of the trial. Mick was convicted on all counts and sentenced to 60 months' imprisonment on the two counts of gross sexual imposition and to life without the possibility of parole on the two counts of rape. The court found Bailey in direct contempt of court for his conduct at the trial, and following a posttrial hearing, it imposed the statutory maximum sentence of a $250 fine and 30 days in jail—which Bailey served. *See* R.C. 2705.01 and 2705.05(A)(1). The finding of contempt and the sanctions were upheld on appeal. *State v. Mick*, 6th Dist. Erie No. E-16-074, 2017-Ohio-8922.

{¶ 19} In March 2018, the court of appeals reversed Mick's convictions, holding that Bailey had deprived Mick of his constitutional right to the effective assistance of counsel by refusing to participate in the trial. *State v. Mick*, 2018-Ohio-999, 108 N.E.3d 1149 (6th Dist.). Mick remained in prison until September 2018. He was retried in 2019, but the result was a mistrial. He is currently awaiting his third trial.

{¶ 20} Bailey admitted that by refusing to participate in the trial, he violated Prof.Cond.R. 3.5(a)(5) (requiring a lawyer to refrain from conduct

intended to disrupt a tribunal), and the panel agreed. In addition, the panel found that his refusal to participate in the trial also violated Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice) and that his disregard of the court's orders to step away from the bench violated Prof.Cond.R. 3.5(a)(6) (prohibiting a lawyer from engaging in undignified or discourteous conduct that is degrading to a tribunal).

{¶ 21} The panel unanimously dismissed four other alleged rule violations, including allegations that Bailey provided incompetent representation, failed to act with reasonable diligence in representing Mick, and had supervisory responsibility for Kenneth's posttrial misconduct (described below).

### Bailey's Objection to the Panel's Exclusion of Evidence

{¶ 22} As his first objection, Bailey asserts that the panel erroneously precluded him from obtaining and presenting relevant evidence in support of his defense. He primarily argues that he should have been allowed to introduce evidence showing that the state committed a discovery violation during Mick's 2019 retrial.

{¶ 23} We review a decision to admit or exclude evidence under an abuse-of-discretion standard. *See, e.g.*, *Disciplinary Counsel v. Gaul*, 127 Ohio St.3d 16, 2010-Ohio-4831, 936 N.E.2d 28, ¶ 51 (a hearing panel did not abuse its discretion by excluding evidence of which the respondent was unaware when he engaged in the alleged misconduct). In this case, the panel chair concluded that although the state failed to disclose potentially exculpatory discovery material in advance of Mick's second trial in July 2019, the discovery violation was not relevant to Bailey's refusal to participate in Mick's 2016 trial. We agree that the 2019 discovery violation could not have established a valid defense to the charges against Bailey or otherwise mitigate the wrongfulness of Bailey's misconduct during the 2016 trial. Therefore, we find no abuse of

discretion in the panel's exclusion of the evidence of the state's discovery violation, and we overrule Bailey's first objection.

**Bailey's Objection to the Board's Findings of Misconduct**

{¶ 24} As his second objection, Bailey challenges the board's findings that he violated Prof.Cond.R. 3.5(a)(6) and 8.4(d).

{¶ 25} Bailey first argues that he justifiably disobeyed the court's instructions because he had interpreted the court's statement that he "may step back" as permissive and because the court initially misunderstood which motion he was attempting to address. This objection challenges the weight and sufficiency of the evidence supporting the board's findings of misconduct. In our independent review of attorney-discipline cases, we generally defer to the hearing panel's credibility determinations unless the record weighs heavily against those findings, because the panel was able to observe the witnesses firsthand. *Cincinnati Bar Assn. v. Statzer*, 101 Ohio St.3d 14, 2003-Ohio-6649, 800 N.E.2d 1117, ¶ 8, citing *Cleveland Bar Assn. v. Cleary*, 93 Ohio St.3d 191, 198, 754 N.E.2d 235 (2001). "[I]t is of no consequence that the board's findings of fact are in contravention of [the] respondent's or any other witness's testimony. 'Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.' " *Disciplinary Counsel v. Zingarelli*, 89 Ohio St.3d 210, 217, 729 N.E.2d 1167 (2000), quoting *Cross v. Ledford*, 161 Ohio St. 469, 478, 120 N.E.2d 118 (1954).

{¶ 26} In this case, the board found that Bailey's disobedience of the court's instruction to step away from the bench—not once but three times—followed by the statement "I may, but I won't," was undignified, discourteous, and degrading to the tribunal. Even if Bailey's misunderstanding and his intention to safeguard his client's rights could justify the first instance of his disobedience, the board was free to determine that that did not excuse his failure to comply with the court's repeated instructions. As Comment [4] to

Prof.Cond.R. 3.5 explains, "[a]n advocate can present the cause, protect the record for subsequent review, and preserve professional integrity by patient firmness no less effectively than by belligerence or theatrics." Here, the record amply supports the board's finding that Bailey's conduct at the bench fell below that standard and violated Prof.Cond.R. 3.5(a)(6).

{¶ 27} Bailey next contends that his refusal to participate in Mick's trial was justified and did not constitute conduct that was prejudicial to the administration of justice in violation of Prof.Cond.R. 8.4(d), because the defense did not have an expert witness or the means to obtain one. According to Bailey, he was concerned at trial that the trial court's error in refusing to appoint a new expert witness and the resulting prejudice to Mick would not be evident in the record on appeal. Bailey maintains that he could not adequately protect Mick's constitutional rights without either a court order appointing the expert witness of his choice at the state's expense or a continuance of the trial. We disagree.

{¶ 28} Bailey has repeatedly insisted that Dr. Ostrov was not Mick's expert witness because Dr. Ostrov had been designated as the state's expert in a 2012 case against Mick that was dismissed before trial. On the record before us, however, there is no evidence suggesting that Bailey ever argued to the trial court that Dr. Ostrov *could not* serve as the defense expert at the 2016 trial. Nor is there any evidence that the state objected to Dr. Ostrov's serving as a defense expert.

{¶ 29} On the contrary, the record supports the board's findings that Bailey effectively designated Dr. Ostrov as a defense expert, subpoenaed him for trial, and provided the prosecution with Dr. Ostrov's report. That report, addressed to Bailey, stated that Dr. Ostrov had reviewed documents relevant to Mick case's at Bailey's request and that Dr. Ostrov had found that "there is room for appreciable doubt regarding the credibility of [the alleged victims']

allegations." In fact, in the months preceding the trial, Bailey communicated with the trial court about Dr. Ostrov's availability to testify.

{¶ 30} It is true that Dr. Ostrov did not have the opportunity to review the testimony of a state's witness whose identity was disclosed two days after Dr. Ostrov submitted his report to Bailey. However, the board rejected Bailey's claim that he had been unable to investigate in the two months that had elapsed between the state's disclosure of the witness and the trial, concluding that the claim "strain[ed] credulity." And even if Bailey had justifiable concerns about the witness's testimony at trial, he could have protected his client's rights in other ways. For example, he could have filed a motion in limine, seeking to exclude the witness's testimony based on the state's late disclosure of the witness, or preserved his objections on the record and filed a direct appeal.

{¶ 31} For these reasons, the board categorically rejected Bailey's claim that the trial court's rulings placed him on the horns of an ethical dilemma that made it impossible for him to try Mick's case. Instead, the board found that Bailey "embarked on a course to thwart justice rather than preserve it" by consciously deciding a week before trial that he would refuse to participate unless the court granted his requests for a continuance and a new expert witness. The board found that in doing so, Bailey disobeyed the court's lawful order to proceed with the trial, appointed himself as the final arbiter of the court's rulings, eliminated any chance of a not-guilty verdict for a man he believed to be innocent, and effectively guaranteed Mick's convictions as a child rapist. The record supports the board's findings that nothing in the judge's rulings deprived Bailey of the ability to adequately defend Mick and that his attempt to force a mistrial was a conscious and risky strategy—not an ethical imperative. For these reasons, we overrule Bailey's second objection and adopt the board's findings of misconduct.

**Recommended Sanction for Kenneth Ronald Bailey**

{¶ 32} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 33} The panel and board found two aggravating factors: that Bailey committed multiple offenses and that he refused to acknowledge the wrongful nature of his conduct. *See* Gov.Bar R. V(13)(B)(4) and (7). As for mitigating factors, the board found that Bailey had no prior disciplinary record and had acted without a selfish or dishonest motive, submitted multiple letters attesting to his good character and reputation, and had other sanctions imposed for his contempt of court. *See* Gov.Bar R. V(13)(C)(1), (2), (5), and (6).

{¶ 34} The panel considered numerous cases cited by relator in which we imposed sanctions ranging from a fully stayed six-month suspension to a partially stayed two-year suspension for an attorney's disobedience of court orders. *See, e.g.*, *Stark Cty. Bar Assn. v. Ake*, 111 Ohio St.3d 266, 2006-Ohio-5704, 855 N.E.2d 1206 (imposing a conditionally stayed six-month suspension on an attorney who engaged in contumacious conduct and violated multiple orders in his own divorce proceeding); *Mahoning Cty. Bar Assn. v. Sakmar*, 127 Ohio St.3d 244, 2010-Ohio-5720, 938 N.E.2d 355 (imposing a two-year suspension, with the second year conditionally stayed, on an attorney who neglected clients' legal matters, left a hearing against the judge's specific instruction that he remain, and was cited for contempt multiple times, including for being tardy or failing to appear at scheduled hearings).

{¶ 35} Of the cases cited by the parties, the panel found that *Disciplinary Counsel v. Rohrer*, 124 Ohio St.3d 65, 2009-Ohio-5930, 919 N.E.2d 180, is most similar to this case, because Rohrer's justification for his misconduct resembled Bailey's justification for his misconduct. Rohrer had been appointed to represent

a ten-year-old boy accused of setting a fire that killed his mother, his sister, and three other children. The judge sealed the record and ordered counsel not to discuss the case with the media. A week later, Rohrer violated that order by instructing his employee to provide the local newspaper with a copy of a motion to compel discovery in which he expressed concern about the prosecutor's history of "springing surprise discovery" on defendants shortly before trial. *Id.* at ¶ 10. After the newspaper published an article on that motion, the judge conducted a hearing to determine whether Rohrer had violated the order. At that hearing, Rohrer made false and misleading statements about his role in the disclosure, claiming that his employee must have misconstrued his instructions. During the resulting disciplinary hearing, Rohrer tried to justify his conduct by claiming that while he was wrong to violate the court's order, "justice got served by the breaking of that gag order," because he received timely discovery from the prosecutor. *Id.* at ¶ 24.

{¶ 36} In suspending Rohrer from the practice of law for six months with no stay, we observed that a lawyer is not free to decide which court orders to obey and that "an otherwise commendable desire to protect a client and engage in zealous advocacy" does not justify the deliberate disobedience of a court order, *id.* at ¶ 26.

{¶ 37} The panel here expressed concern that in the absence of an actual suspension from the practice of law, the public could be left with the erroneous perception that a judge's orders may be disregarded "under the banner of the Sixth Amendment and the lawyer's personal view of what justice requires." Therefore, the panel recommended that Bailey be suspended from the practice of law for one year with six months stayed.

{¶ 38} The board believed that a more severe sanction is necessary to protect the public, the integrity of the criminal justice system, and the public's perception of the integrity and fairness of the criminal justice system in light of

12

(1) Bailey's conscious, premeditated actions forcing a mistrial or a reversal on appeal, (2) the resulting harm to his client Mick, who was imprisoned during the pendency of his appeal, and to the alleged victims who were forced to endure additional delays and public hearings, (3) the additional expense to the public for Mick's multiple trials, (4) Bailey's lack of remorse for his actions, and (5) his admission that if confronted with the same scenario in the future, he would pursue a similar course of action. It therefore recommends that Bailey be suspended from the practice of law for two years, with one year stayed on the condition that he engage in no further misconduct.

### Bailey's Objections to the Board's Recommended Sanction

**{¶ 39}** As Bailey's third objection to the board's report, he argues that the board erroneously found that two aggravating factors are present.

**{¶ 40}** First, he argues that because his offenses arose from a single underlying incident and he has no prior misconduct, he cannot be found to have committed multiple offenses. But the evidence shows that Bailey committed two acts of misconduct—refusing to abide by the court's repeated instruction to step back from the bench and failing to participate in the trial—and those two acts resulted in three separate rule violations. Those facts are sufficient to support the board's findings that he engaged in multiple offenses. *See, e.g.*, *Disciplinary Counsel v. Smith*, 146 Ohio St.3d 209, 2016-Ohio-1584, 54 N.E.3d 1208, ¶ 9 (finding that an attorney committed multiple offenses connected to a single client matter by failing to appear at a hearing and failing to protect the client while withdrawing from the representation).

**{¶ 41}** Bailey also objects to the board's finding that he has refused to acknowledge the wrongful nature of his conduct, and he asserts that he fully cooperated in these disciplinary proceedings. He notes that he stipulated to a single rule violation at the outset of the hearing. And although he admits that he testified that he believed at the time that his refusal to participate in Mick's trial

was the appropriate decision, he notes that he later questioned that decision during an interview for an article published in *Vindicator*, the magazine of the Ohio Association of Criminal Defense Lawyers. But the record supports the board's findings that at his disciplinary hearing, Bailey continued to blame the trial-court judge for an ethical dilemma that Bailey himself created and that he believed that he bore no responsibility for what occurred at Mick's trial. In fact, Bailey testified that if he ever encountered a similar situation again, he would take the same course of action. We therefore overrule Bailey's third objection.

{¶ 42} As his fourth objection to the board's report, Bailey contends that the board's recommended sanction of a two-year suspension, with one year conditionally stayed, is not warranted by the evidence. He notes that he has had no prior discipline in his more than 30 years of practice and that the board found that he acted in a forthright manner without dishonesty, fraud, or misrepresentation. Citing the extensive mitigating factors present in this case, including his serving a maximum 30-day jail sentence for his contempt of court, Bailey argues that a two-year sanction would be appropriate only if it is fully stayed on conditions or, alternatively, that no additional sanction is warranted.

{¶ 43} Although it is true that Bailey did not engage in dishonest conduct, his refusal to participate in Mick's criminal trial was extremely disruptive to the administration of justice. Not only did Bailey foreclose any possibility of Mick's being acquitted of any charges at his 2016 trial, he ensured that Mick would spend time in prison and face at least one retrial. Nearly four years after Bailey took the administration of justice into his own hands, Mick, his accusers, and the public are still waiting for a final verdict in Mick's case.[2]

{¶ 44} "It is true that the vigorous and effective representation of a client is the responsibility of all attorneys. This duty, however, does not exist in

---

2. At oral argument, relator's counsel stated that Mick's third trial is scheduled for August 2020.

isolation from the other obligations imposed upon an attorney through our Disciplinary Rules." *Disciplinary Counsel v. Greene*, 74 Ohio St.3d 13, 16, 655 N.E.2d 1299 (1995). The preamble to the Rules of Professional Conduct instructs that "[a]s an officer of the court, a lawyer not only represents clients but has a special responsibility for the quality of justice." Prof.Cond.R., Preamble [1]. Our rules governing the professional conduct of attorneys "are founded on respect for the law, for the court system, for the judges, for counsel and, of course, for clients." *Disciplinary Counsel v. Trumbo*, 76 Ohio St.3d 369, 373, 667 N.E.2d 1186 (1996). A lawyer may not disregard one of those duties in favor of another, nor may these rules be "overshadowed by either a desire to win a case or as a favor to any person," *Greene* at 16.

{¶ 45} Here, in a highly unusual set of circumstances, Bailey allowed his desire to protect his client from alleged trial-court errors overshadow his duty to respect and abide by the well-established procedures of trial- and appellate-court proceedings. In doing so, he elevated his own opinions about his client's case above the judgments made by a member of the judiciary whose duty it is to uphold and apply the law fairly and impartially.

{¶ 46} Although we agree with the panel and board that Bailey should be sanctioned for his misconduct, we are persuaded that his completion of the maximum 30-day jail sentence for his contempt of court for the same conduct renders the board's recommended sanction too harsh. We therefore agree with the panel that the appropriate sanction in this case is a one-year suspension with six months stayed on the condition that Bailey engage in no further misconduct.

### Kenneth's Misconduct

{¶ 47} The first count of relator's complaint against Kenneth Bailey alleged that he had failed to act with reasonable diligence in Mick's case, had failed to explain Bailey's legal strategy to the extent reasonably necessary to permit Mick to make informed decisions about the representation, diluted his

loyalty to the client by following Bailey's lead, and failed to provide any defense to Mick at trial. The panel unanimously dismissed this count upon finding that Kenneth had limited involvement in the case and that his role was primarily that of a son supporting his father.

{¶ 48} The second count of relator's complaint alleged that Kenneth knowingly or recklessly made false statements on Facebook concerning the integrity of the judge who presided over Mick's 2016 trial. In his initial Facebook post, Kenneth gave a report about his father's time in jail and then commented:

> While I respect the Judge for his office and his faith, I'm probably the most upset. After witnessing the Judge condescendingly criticize prosecutors, probation officers, defense lawyers, and defendants—all in open court and in a rude manner— I think it's time for the self-righteousness to stop. The fact it takes the Court years to rule on divorce cases after the trial is completed makes the need to keep the underlying case here moving is [sic] wholly dishonest. The fact the Judge's treatment of other court employees has caused an unpublished rift in the courthouse, it is self-serving, and it adds nothing to jurisprudence. Someone needs to speak out against this, because it is not okay. Someone must run against him.

{¶ 49} Kenneth's post garnered comments from more than 30 of his Facebook followers and was presumably read by others who did not comment. Kenneth also posted several comments under his original post. In one, he stated that his father "was entitled to make a record, and he was denied that right. Just sad." In another comment, Kenneth blamed the judge for the consequences of his father's refusal to participate in the trial, stating: "All our Judge accomplished

was to make it a very long road to get the continuance we requested, make it cost the taxpayers an immense amount of money and waste a week of 12 jurors['] lives." Ten days after Kenneth's initial Facebook post, the Sandusky Register published most of it in an article about Bailey's serving his sentence for contempt of court. Shortly thereafter, Kenneth sent an e-mail to the judge in an effort to apologize for his actions, and at some point he removed his Facebook post.

{¶ 50} Because lawyers " 'possess, and are perceived by the public as possessing, special knowledge of the workings of the judicial branch of government,' " we have recognized that "[their] statements made during court proceedings are 'likely to be received as especially authoritative.' " *Disciplinary Counsel v. Gardner*, 99 Ohio St.3d 416, 2003-Ohio-4048, 793 N.E.2d 425, ¶ 22, quoting *State ex rel. Oklahoma Bar Assn. v. Porter*, 766 P.2d 958, 969 (Okla.1988), and *Gentile v. Nevada State Bar*, 501 U.S. 1030, 1074, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991). Therefore, Prof.Cond.R. 8.2(a) prohibits a lawyer from knowingly or recklessly making false statements concerning the qualifications or integrity of a judicial officer.

{¶ 51} In *Gardner*, we adopted an objective standard for determining whether a lawyer's statements about a judicial officer were made with knowledge or reckless disregard of their falsity. We look to the nature of the statements and the context in which they were made and consider what a reasonable attorney, in light of all his professional functions, would do in the same or similar circumstances. *Id.* at ¶ 26. Applying that standard in *Gardner*, we held that "an attorney may be sanctioned for making accusations of judicial impropriety that a reasonable attorney would believe are false." *Id.* at ¶ 31.

{¶ 52} Here, Kenneth's comments were not incorporated in a document filed in court, but they were based on his personal observations of a trial in which he appeared as counsel of record, albeit only for the purpose of arguing in favor of

a mistrial. Therefore, the board found that the public would reasonably assign some credence to what he had to say.

**{¶ 53}** In analyzing Kenneth's Facebook posts, the board first took issue with his statement comparing the judge's docket management in Mick's case to his docket management in divorce cases. Given the juxtaposition of the timelines that the Rules of Superintendence establish for the disposition of criminal and domestic-relations cases—which can vary by as much as 12 months—the board found that Kenneth's statement was a reckless mischaracterization of the judge's docket management and judicial performance.[3] Relator did not present any evidence addressing the truth or falsity of the remaining statements in Kenneth's initial Facebook post, and the board made no findings of misconduct with respect to them.

**{¶ 54}** However, the board determined that Kenneth's comment that the trial-court judge failed to give Bailey the opportunity to make a record was false, because the trial transcript shows that the judge had given Bailey ample opportunity to make a record of his objections—and that Bailey availed himself of that opportunity. The board also found that Kenneth's next comment, blaming the judge for the consequences of Bailey's refusal to participate in the trial and likening the Sixth District Court of Appeals' reversal of Mick's convictions to the granting of the continuance that the trial court had denied, completely mischaracterized the criminal trial and the appellate court's decision. Contrary to Kenneth's claims, the appellate court reversed Mick's convictions upon finding that *Bailey* had denied Mick his constitutional right to the effective assistance of counsel by refusing to participate in the trial and by abandoning Mick in "a deliberate attempt to cause the court to declare a mistrial," *Mick*, 2018-Ohio-999,

---

3. *See, e.g.*, Sup.R. 39(B)(1) (requiring all criminal cases to be tried within six months of arraignment); R.C. 2945.72 (strictly limiting the reasons for extending the deadline for completing criminal trials); Sup.R. 39(A) and SRF Form B (providing 18-month time guideline for the completion of a divorce involving children).

108 N.E.3d 1149, at ¶ 19. Consequently, the court did not reach the issue whether the trial court had erred by denying Bailey's motions for a continuance and for a new expert witness. *Id.* at ¶ 15, 26.

{¶ 55} Ultimately, the board determined that the three statements at issue were not general expressions of opinion but, instead, were "specific remarks about judicial performance that, taken together, wrongly called into question [the trial judge's] ability and integrity," and it found that they violated Prof.Cond.R. 8.2(a). And finally, because there was no evidence to suggest that the e-mail Kenneth sent to the judge was anything other than a sincere attempt to make amends, the panel unanimously dismissed another alleged rule violation.

{¶ 56} Having independently reviewed the record, we agree that Kenneth's three statements discussed by the board falsely impugned the integrity of the trial-court judge because a reasonable attorney under the same or similar circumstances would believe them to be false. We therefore adopt the board's finding that Kenneth violated Prof.Cond.R. 8.2(a).

### Kenneth Richard Bailey's Sanction

{¶ 57} The board found that no aggravating factors are present. On the other hand, five mitigating factors weigh in favor of imposing a lesser sanction—namely, the absence of prior discipline, the absence of a dishonest or selfish motive, Kenneth's timely, good-faith effort to rectify the consequences of his misconduct, his full and free disclosure to the board, and evidence of his good character and reputation as demonstrated by 12 letters from attorneys and others familiar with his practice and his involvement with the Ohio Association of Criminal Defense Lawyers. *See* Gov.Bar R. V(13)(C)(1) through (5).

{¶ 58} The board also found that Kenneth's Facebook posts were understandably emotional. He was a relatively young lawyer working under the tutelage of his father, who had adopted a risky strategy in a high-profile case and wound up in jail for his contempt of court. The board credited Kenneth for taking

his posts down after he learned that they had been published in a local newspaper and for his attempt to apologize to the judge. The board ultimately found that Kenneth had recognized his serious error in judgment, that he was appropriately contrite for his misconduct, and that it was a mistake that he would probably not repeat.

{¶ 59} In light of those mitigating factors, the board recommends that Kenneth be publicly reprimanded for his misconduct. Although neither the board nor Kenneth cited any authority in support of that recommendation, we have publicly reprimanded an attorney for making inappropriate and disrespectful statements about a judge to a newspaper reporter and making inappropriate statements to a judge during a hearing. *See Disciplinary Counsel v. Grimes*, 66 Ohio St.3d 607, 614 N.E.2d 740 (1993). On the specific facts of this case, we agree that a public reprimand is the appropriate sanction for Kenneth's misconduct.

**Conclusion**

{¶ 60} Kenneth Ronald Bailey is hereby suspended from the practice of law in Ohio for one year with six months stayed on the condition that he engage in no further misconduct. If he fails to comply with the condition of the stay, the stay will be lifted and he will serve the full one-year suspension.

{¶ 61} Kenneth Richard Bailey is hereby publicly reprimanded for knowingly or recklessly making false statements concerning the integrity of a judicial officer.

{¶ 62} Costs are taxed to respondents.

Judgment accordingly.

KENNEDY, FRENCH, DEWINE, DONNELLY, and STEWART, JJ., concur.

O'CONNOR, C.J., and FISCHER, J., concur in part and dissent in part and would suspend respondent Kenneth Ronald Bailey for two years with one year conditionally stayed.

_____

Murray & Murray Co., L.P.A., Joseph A. Galea, and Margaret M. Murray; and Nicholas J. Smith, Bar Counsel, for relator.

Milano, Attorneys at Law, and Jay Milano, for respondent Kenneth Ronald Bailey.

David L. Doughten Co., L.P.A., and David L. Doughten, for respondent Kenneth Richard Bailey.

_____