**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Stobbs*, **Slip Opinion No. 2023-Ohio-1719.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-1719

DISCIPLINARY COUNSEL *v*. STOBBS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Stobbs*, **Slip Opinion No. 2023-Ohio-1719.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct— Suspension for 18 months with 12 months conditionally stayed.*

(No. 2022-1511—Submitted February 7, 2023—Decided May 25, 2023.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2022-012.

————————————

**Per Curiam.**

{¶ 1} Respondent, Brent Clark Stobbs, of Reynoldsburg, Ohio, Attorney Registration No. 0041262, was admitted to the practice of law in Ohio in 1989.

{¶ 2} In a two-count complaint, relator, disciplinary counsel, alleged that Stobbs committed eight ethical violations arising from his representation of clients in two related civil cases and a separate criminal case. The first count alleged that

Stobbs engaged in an impermissible conflict of interest by representing both parties to a civil action and made false statements to a tribunal and that his conduct was dishonest and prejudicial to the administration of justice. Among other things, the second count alleged that Stobbs intentionally and habitually made frivolous motions and engaged in other conduct that was undignified, discourteous, and degrading to the tribunal.

{¶ 3} A three-member panel of the Board of Professional Conduct heard testimony from six witnesses, including Stobbs. After that hearing, the panel issued a report finding that Stobbs committed seven of the alleged rule violations, unanimously dismissing the eighth charge, and recommending that he be suspended from the practice of law for 18 months with 12 months conditionally stayed. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction. No timely objections have been filed. However, on March 31, 2023, Stobbs filed a motion to strike this court's December 14, 2022 show-cause order essentially raising untimely objections to the board's report and recommendation. That motion is hereby denied.

{¶ 4} After reviewing the record and our precedent, we adopt the board's findings of misconduct and the recommended sanction.

## MISCONDUCT

### Count One: The Lost Hollow Campground litigation

*The Hocking County case*

{¶ 5} Judy Davis owned a lot in the Lost Hollow Campground in Hocking County. In December 2018, Stobbs filed a complaint for a declaratory judgment on Davis's behalf in the Hocking County Court of Common Pleas against the Lost Hollow Property Owners Association, Inc., its board of directors, and two individuals. Davis sought a judicial determination that R.C. Chapter 5312 (governing planned communities) does not apply to lots, tracts, or parcels of property that are part of the campground. On February 15, 2019, the court granted

2

the defendants' motion to dismiss the case without prejudice for failure to join all Lost Hollow property owners as necessary parties.

{¶ 6} In April 2019, Stobbs filed a motion to vacate the dismissal entry, arguing that all 386 Lost Hollow property owners were parties to the action Davis filed because the property-owners association had been named as a defendant. The court overruled that motion in May 2019. In June 2019, Stobbs filed a Civ.R. 50(B) motion for judgment notwithstanding the verdict or, in the alternative, a new trial, in which he reiterated the claims set forth in his earlier motion to vacate the dismissal entry. Later in June, the defendants' counsel filed a motion for sanctions for frivolous conduct pursuant to Civ.R. 11, alleging that Stobbs's motions had "regurgitated the exact same arguments" raised in his opposition to the defendants' motion to dismiss and offered no legal support for those arguments.

{¶ 7} In August 2019, Stobbs filed a motion to remove the defendants' counsel and to strike ab initio all of the defendants' pleadings, including their motion for sanctions. Stobbs later objected to the defendants' response to that motion. In November 2019, Stobbs filed a motion for summary judgment, once again requesting that the court vacate its dismissal entry.

{¶ 8} In February 2020, the court overruled all of Stobbs's pending motions.

{¶ 9} In June 2020, the court found that with the exception of his motion to vacate, Stobbs's postdismissal filings were filed in bad faith and had no basis in law or fact. The court ordered Stobbs to pay $5,812.50 in attorney fees that the defendants had incurred to defend against those frivolous filings. Stobbs did not appeal that judgment, and relator has asserted that the sanction remained unpaid at the time of Stobbs's disciplinary hearing.

*The Franklin County case*

{¶ 10} In summer 2020, Stobbs met with Davis and her friend Laura Wurzburger, who also owned property at Lost Hollow, to discuss litigating the

applicability of R.C. Chapter 5312 to their campground lots. They planned to have Wurzburger file a complaint against Davis in Franklin County seeking the same declaratory relief that Davis had sought in the Hocking County case. They also agreed that Davis would be the sole defendant and that they would agree to resolve the case. To that end, Davis conceded every allegation of the complaint.

**{¶ 11}** According to Davis's testimony at the disciplinary hearing, Stobbs informed her and Wurzburger that he had a conflict of interest and could not represent both of them. Stobbs and Davis testified that he represented only Davis and that Wurzburger proceeded pro se. Nevertheless, Stobbs acknowledged that he drafted Wurzburger's complaint and gave it to her for her review and approval. In September 2020, that complaint was filed in the Franklin County Municipal Court, bearing Stobbs's signature as the plaintiff's attorney. Accompanying that complaint were a civil-case filing form signed by Stobbs as the filing party and a military-service affidavit in which Stobbs averred that he was the plaintiff's attorney and that the defendant (Davis) was not in the military.

**{¶ 12}** At his disciplinary hearing, Stobbs offered conflicting testimony about his signature on Wurzburger's complaint. He attempted to blame Wurzburger for filing a "rough draft" without correcting the signature block that bore his signature. After acknowledging that the signature on the complaint was his and that he had put it there "in another complaint," he claimed that he had not signed the complaint and that Wurzburger had signed his name, before stating, "I didn't realize my signature was on there." Stobbs also testified, "Now, as far as who took it to the courthouse, I happened to take it to the courthouse," though he later backtracked by stating that he "probably" had done so.

**{¶ 13}** The board found that the complaint bearing Stobbs's signature misrepresented material facts about the litigation. The complaint alleged that Wurzburger and Davis were contemplating a contract concerning nonresidential campground lots and that the court's clarification regarding the applicability of R.C.

Chapter 5312 to campground lots would "lead to resolution of the conflict between the two parties, * * * without affecting others, such that all required affected persons are before the Court." The board determined that that statement was false in that it directly contradicted several representations that Stobbs had made in the Hocking County case. For example, in his motion to vacate the dismissal of the Hocking County case, Stobbs had asserted that all defendants in that action—which he claimed included all 386 Lost Hollow property owners—would be affected by a declaratory judgment regarding the applicability of R.C. Chapter 5312 to campground lots. And in his Civ.R. 50(B) motion, Stobbs stated, "Defendants' ridiculous proposition (*that only one of 386 Association members will be affected by a declaratory judgment*) is fundamentally dishonest, and its assertion that the other 385 members will not be affected by *res judicata* is both dishonest and contrary to law." (Emphasis sic.)

{¶ 14} As the board noted, Stobbs not only had failed to name all affected parties in the Franklin County case but also had substituted his "true client"—Davis—for them. He then drafted Davis's answer and filed it, though it falsely represented that Davis represented herself pro se, when in fact Stobbs represented her at all times in that case.

{¶ 15} At Stobbs's disciplinary hearing, Franklin County Municipal Court Judge Jodi Thomas testified that sometime after Davis's answer to the complaint was filed, Stobbs approached her while she was serving as the court's duty judge. He presented her with an unfiled joint motion for a declaratory judgment and a proposed entry. Judge Thomas questioned Stobbs about whom he represented in the case and found his answers to be evasive. After reviewing the documents and case file, Judge Thomas declined to sign the entry and dismissed the case for lack of subject-matter jurisdiction. Despite that dismissal, Stobbs later presented the same motion and proposed entry to another judge in the duty-judge room who

approved the entry; upon learning that the case had previously been dismissed, the judge vacated that entry.

{¶ 16} The board found that Stobbs's conduct in the Lost Hollow Campground litigation violated Prof.Cond.R. 1.7(c)(2) (prohibiting a lawyer from accepting or continuing a representation that would involve the assertion of a claim by one client against another client represented by the lawyer in the same proceeding), 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice). We adopt those findings of misconduct.

### Count Two: The Dugger case

{¶ 17} In 2019, Eliot Dugger was indicted in Franklin County on charges of receiving stolen property, having weapons while under disability with a gun specification, and aggravated possession of drugs. Stobbs entered a notice of appearance as Dugger's attorney on August 30, 2021. At that time, the court had already denied a motion to suppress evidence filed by Dugger's prior counsel.

{¶ 18} On October 15, 2021, just four days before the scheduled trial, Stobbs filed a motion to dismiss the weapons charge and the related gun specification for "insufficient evidence of elements of the charge and inability to prove guilt beyond a reasonable doubt." Instead of proceeding with the trial, Judge Christopher Brown conducted a hearing on Stobbs's motion to dismiss. Judge Brown found that the motion was inappropriate because it essentially asked the court to dismiss the case based on the evidence *Stobbs believed* that the state would present at trial.[1] After a lengthy discussion, Judge Brown denied the motion and rescheduled the trial for December 6, 2021.

---

1. In this disciplinary case, relator contended that Stobbs's motion to dismiss was essentially a premature motion for a directed verdict or acquittal pursuant to Crim.R. 29(A), which allows a court

**{¶ 19}** Stobbs filed a discovery motion on November 16. On December 3, he filed three additional motions: (1) a motion to continue the trial, alleging that discovery was incomplete, (2) a motion to vacate the court's October 19 entry denying his motion to dismiss, and (3) an amended pretrial motion to dismiss Dugger's weapons charge.

**{¶ 20}** In his motion to vacate, Stobbs referred to the case *Ex Parte Bushnell*, but he did not provide any citation to the case. *Ex Parte Bushnell*, 8 Ohio St. 599 (1858), is a 165-year-old case involving a habeas corpus petition that has no relevance to Dugger's pretrial motion to dismiss the criminal charges against him or his motion to vacate the court's denial of that motion. In his motion to vacate, Stobbs claimed that "a new burden of proof shifted to [the prosecution] upon Defendant's challenge to the elements of the [weapons] charge,' " but he offered no legal authority to support that argument.

**{¶ 21}** On December 6, the day of trial, Stobbs filed a second amended motion to dismiss the weapons charge, arguing that the weapon had been seized in violation of Dugger's rights under the Fourth Amendment to the United States Constitution, but he cited no legal authority to support that argument. Instead, Stobbs presented his own version of the facts in an attempt to challenge the court's denial of Dugger's earlier motions to suppress evidence and to dismiss the weapons charge. During the hearing on his pretrial motions, Stobbs repeatedly interrupted Judge Brown and at one point told him, "You don't understand the argument." The judge announced his intention to proceed to trial, denying the motions on their merits and/or as untimely. Stobbs then met with the assistant prosecuting attorney assigned to Dugger's case and negotiated a plea agreement, which was finalized later that day.

---

to acquit a defendant "if the evidence is insufficient to sustain a conviction" but only after the close of all the evidence.

{¶ 22} During the December 6 hearing—and later in his testimony at the disciplinary hearing—Judge Brown expressed his belief that Stobbs's motion to continue the trial had been filed for a dilatory purpose. Judge Brown also testified that Stobbs's tone, his demeanor, the way that he kept interrupting him while he was making rulings, and his refusal to move on at the December 6 hearing were disrespectful to the court.

{¶ 23} The board found that Stobbs's conduct in Dugger's case violated Prof.Cond.R. 3.1 (prohibiting a lawyer from asserting an issue in a proceeding unless there is a basis in law and fact for doing so that is not frivolous), 3.4(d) (prohibiting a lawyer from intentionally or habitually making a frivolous pretrial motion), and 3.5(a)(6) (prohibiting a lawyer from engaging in undignified or discourteous conduct that is degrading to a tribunal). We adopt these findings of misconduct.

## RECOMMENDED SANCTION

{¶ 24} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 25} Four aggravating factors are present in this case—Stobbs engaged in a pattern of misconduct, failed to cooperate in the disciplinary process, refused to acknowledge the wrongful nature of his conduct, and failed to timely pay the monetary sanctions imposed on him in the Hocking County case. *See* Gov.Bar R. V(13)(B)(3), (5), (7), and (9). The board also noted that Stobbs had failed to comply with an order to disclose his witnesses, failed to attend a scheduled pretrial conference, failed to respond to relator's proposed stipulations, and waited until one day before the disciplinary hearing to file a motion for a continuance based on complications of COVID-19. Furthermore, he made inappropriate comments to two of relator's witnesses as they left the stand during his disciplinary hearing,

telling Judge Brown, "And someday you owe me an apology" and calling another witness a "liar." The only mitigating factor is Stobbs's clean disciplinary record. *See* Gov.Bar R. V(13)(C)(1).

{¶ 26} In determining the appropriate sanction for Stobbs's misconduct, the board noted that in *Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 190, 658 N.E.2d 237 (1995), we expressed concern regarding the growing number of cases in which members of the bar had deceived a court or their clients. In that case, we recognized that conduct involving material misrepresentation to a court or a pattern of dishonesty with a client "strikes at the very core of a lawyer's relationship with the court and with the client" and that "[r]espect for our profession is diminished with every deceitful act of a lawyer." *Id*. Upon finding that the sanctions we had previously imposed for such misconduct had not had the desired deterrent effect, we announced, "When an attorney engages in a course of conduct resulting in a finding that the attorney has violated [former] DR 1-102(A)(4) [now Prof.Cond.R. 8.4(c)], the attorney will be actually suspended from the practice of law for an appropriate period of time." *Fowerbaugh* at 190.

{¶ 27} With that precept in mind, the board considered three cases in which we imposed term suspensions (two of which were partially stayed on conditions) on attorneys who had engaged in conduct prejudicial to the administration of justice by making false statements of fact or law to a court or engaging in discourteous or disruptive conduct that was degrading to a tribunal.

{¶ 28} In *Erie-Huron Cty. Bar Assn. v. Bailey and Bailey*, 161 Ohio St.3d 146, 2020-Ohio-3701, 161 N.E.3d 590, Kenneth Ronald Bailey refused to participate in his client's criminal trial after the court denied several motions seeking appointment of a defense expert and continuance of the trial, and his client was convicted of all charges. Bailey was found to be in direct contempt of court and was sentenced to the statutory maximum sentence of 30 days in jail for his conduct. Over Bailey's objections, we found that his conduct violated

Prof.Cond.R. 3.5(a)(5) (requiring a lawyer to refrain from conduct intended to disrupt a tribunal), 3.5(a)(6), and 8.4(d). *Id.* at ¶ 20, 31. Although Bailey's trial conduct was more egregious than that of Stobbs, he did not make false statements to the court as Stobbs did. *See id.* at ¶ 43.

{¶ 29} Like Stobbs, Bailey committed multiple offenses and refused to acknowledge the wrongful nature of his misconduct. *See id.* at ¶ 33. Although Bailey's refusal to participate in the trial caused significant harm to his client, he had no prior disciplinary record, did not act with a selfish or dishonest motive, submitted multiple letters attesting to his good character and reputation, and had other sanctions imposed for his misconduct. *Id.* at ¶ 33, 42. Citing the highly unusual circumstances of the case and Bailey's completion of his 30-day jail sentence, we rejected the board's recommendation that Bailey be suspended from the practice of law for two years with one year conditionally stayed. Instead, we adopted the panel's recommended sanction of a one-year suspension with six months stayed on the condition that Bailey engage in no further misconduct. *Id.* at ¶ 45-46.

{¶ 30} In *Disciplinary Counsel v. Phillabaum*, 144 Ohio St.3d 417, 2015-Ohio-4346, 44 N.E.3d 271, an assistant prosecutor insisted that a legal assistant add to an indictment gun specifications that had not been presented to a grand jury, then signed the indictment knowing that it contained a false statement. After Phillabaum's misconduct came to light, the prosecutor's office presented the case to the grand jury a second time and obtained a superseding indictment that included a gun specification. Phillabaum pleaded guilty to a single count of dereliction of duty, a second-degree misdemeanor. In addition to finding that Phillabaum's conduct violated Prof.Cond.R. 3.3(a)(1), 8.4(c), and 8.4(d), all of which are at issue in this case, we also found that it violated Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). *See id.* at ¶ 7. In the presence of four mitigating factors and no aggravating

factors, we suspended Phillabaum from the practice of law for one year with no stay. Although Stobbs made false statements of fact in several court filings and in his interactions with two judges, none of those misrepresentations rose to the level of Phillabaum's misrepresentation of fact in a criminal indictment. But Stobbs also committed additional acts of misconduct by representing both parties in a civil action, intentionally and habitually making frivolous motions, and repeatedly interrupting and arguing with a judge.

{¶ 31} And in *Disciplinary Counsel v. LoDico*, 106 Ohio St.3d 229, 2005-Ohio-4630, 833 N.E.2d 1235, an attorney engaged in repeated acts of defiance during several criminal proceedings. During a murder trial, LoDico made inappropriate, loud, and rude statements that wrongly impugned the integrity of a prospective juror during voir dire, he spoke loudly during sidebars in an apparent effort to ensure that the jury heard his statements, he made dramatic and inappropriate facial expressions in front of the jury as witnesses testified, and he repeatedly ignored the court's admonishments about his behavior. LoDico also repeatedly ignored the court's rulings, argued with the judge, and made inappropriate and disrespectful comments during trial and at sidebars.

{¶ 32} We found that LoDico's conduct violated rules prohibiting conduct that is prejudicial to the administration of justice, undignified or discourteous conduct that degrades a tribunal, and conduct that adversely reflects on a lawyer's fitness to practice law. *Id.* at ¶ 15. We also found that his conduct violated a rule prohibiting the intentional or habitual violation of an established rule of procedure or evidence. *Id.* at ¶ 16 and 23. However, LoDico's misconduct appeared to be "part of a much grander pattern" in that he admitted that he had paid "thousands of dollars" in contempt fines. *Id.* at ¶ 27. As additional aggravating factors, we found that he had made false statements about his past and failed to acknowledge any wrongdoing. *Id.* at ¶ 18, 27. In mitigation, LoDico, lacked a dishonest or selfish motive, and presented evidence of his good reputation. *Id.* at ¶ 18, 29.

**{¶ 33}** In contrast with the facts of this case, the evidence suggested that LoDico suffered from one or more mental-health disorders that may have contributed to his misconduct—though we did not attribute any mitigating effect to them. *See id.* at ¶ 14, 29. Finding that LoDico's misconduct warranted a substantial sanction, we suspended him from the practice of law for 18 months with six months stayed on conditions designed to ensure that he would be capable of resuming the competent, ethical, and professional practice of law. *Id.* at ¶ 33-37.

**{¶ 34}** After reviewing the record and the precedent cited by the board, we conclude that Stobbs's pattern of dishonest conduct—which extended to his testimony in this disciplinary proceeding—warrants an actual suspension from the practice of law and that the scope of his additional misconduct warrants a substantial, albeit stayed, suspension. We adopt the board's recommendation that he be suspended from the practice of law for 18 months with 12 months conditionally stayed.

## CONCLUSION

**{¶ 35}** Accordingly, we deny the motion to strike our December 14, 2022 show-cause order and we hereby suspend Brent Clark Stobbs from the practice of law in Ohio for 18 months, with 12 months stayed on the conditions that he submit proof to relator within 90 days that he has paid the $5,812.50 in monetary sanctions ordered in *Davis v. Lost Hollow Property Owners Assoc., Inc.*, Hocking C.P. No. 18-CV0227, and commit no further misconduct. If Stobbs fails to comply with a condition of the stay, the stay will be revoked and he will be required to serve the full 18-month suspension. Costs are taxed to Stobbs.

Judgment accordingly.

KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ., concur.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Matthew A. Kanai and Donald M. Scheetz, Assistant Disciplinary Counsel, for relator.

Brent C. Stobbs, pro se.

_____