**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Haven*, **Slip Opinion No. 2024-Ohio-5278.]**

<u>NOTICE</u>

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-5278

DISCIPLINARY COUNSEL *v.* HAVEN.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Haven*, Slip Opinion No. 2024-Ohio-5278.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—One-year suspension.*

(No. 2024-1108—Submitted September 17, 2024—Decided November 7, 2024.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2023-044.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, and DETERS, JJ. BRUNNER, J., did not participate.

**Per Curiam.**

**{¶ 1}** Respondent, Rodney Eugene Haven, of Wooster, Ohio, Attorney Registration No. 0081750, was admitted to the practice of law in Ohio in 2007.

**{¶ 2}** On December 21, 2023, relator, disciplinary counsel, filed a complaint with the Board of Professional Conduct alleging that a standoff Haven instigated with law enforcement, his conviction for operating a motor vehicle while impaired, his interruption of court proceedings, and his disruptive conduct during the ensuing disciplinary investigation violated the Rules of Professional Conduct. The parties entered into stipulations of fact, misconduct, and aggravating and mitigating factors and submitted stipulated exhibits.

**{¶ 3}** After a hearing, a panel of the board issued a report finding that Haven committed the charged misconduct and recommended that he receive a one-year suspension with conditions on his reinstatement. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction.

**{¶ 4}** After reviewing the record, we adopt the board's findings of fact and misconduct as well as its recommended sanction.

## I. MISCONDUCT

### A. *Standoff with Law Enforcement and Resulting Convictions*

**{¶ 5}** On January 5, 2023, the Wooster Police Department received from a suicide hotline a tip warning that Haven was armed and suicidal. Within the previous several days, Haven had learned that his wife was leaving him. The tip further warned that if police came to Haven's house, "the gun [would come] out."

**{¶ 6}** After the police received the tip, an officer contacted Haven by phone. Although Haven informed the officer that he did not want to use his firearm, he also said he would not allow the police into his home, adding: "Anybody comes in the house . . . I've got seven bullets, Colt .45, in the chamber that can do enough damage . . . I just need one for me." (Ellipses in original.) Haven had also left a voicemail message for his wife, saying: "If you want me to fucking blow my brains out, I'll do it right now . . . I would do it in under 60 seconds." (Ellipsis in original.) After nearly an hour on the phone with Haven, the police determined that there was no one else in the house and—citing safety concerns about making physical

contact—decided to permit Haven to end the call. When the police reached out to Haven in the afternoon, he seemed to have calmed down.

{¶ 7} Later that day, however, the police learned that Haven was driving to the United States Military Academy at West Point, where his son was enrolled, possibly intending to commit suicide. Officers issued a law-enforcement bulletin stating that Haven was armed, intoxicated, and possibly suicidal.

{¶ 8} At some point, after talking with his brother by phone, Haven voluntarily turned around and began to drive home. Multiple cruisers from the Wayne County Sheriff's Office, the Smithville Police Department, and the Wooster Police Department intercepted Haven's vehicle near State Route 585 and Vinton Woods Drive in Wooster. Police ordered the closure of State Route 585 and ordered Haven to get out of his vehicle. He refused for 24 minutes, informing officers that he had a loaded firearm and repeatedly telling them to shoot him. An officer was eventually able to contact Haven by cellphone and spoke to him for approximately 40 minutes. The officer convinced Haven to exit his vehicle, after which he was taken into custody. Officers found a loaded .45 caliber pistol in the vehicle's center console.

{¶ 9} Rather than arrest Haven, Wooster police transported him to the hospital for an emergency mental-health evaluation under R.C. 5122.10. At intake, Haven had a blood-alcohol concentration of 0.247—over three times the legal limit.

{¶ 10} Haven was indicted for improperly handling a firearm in a motor vehicle, *State v. Haven*, Wayne C.P. No. 2023 CRC-I 000117, and for operating a motor vehicle while impaired ("OVI"), *State v. Haven*, Wayne C.P. No. 2023 CRC-I 000301. He applied for intervention in lieu of conviction in the improper-handling case, which the court granted on July 10, 2023. He then pleaded guilty to both charges. For the OVI conviction, Haven was sentenced to three days of incarceration or a 72-hour driver-intervention program and 12 months of community control.

### B. Divorce Case

**{¶ 11}** In January 2023, Haven's wife filed a petition for divorce. Haven attended a hearing on the divorce petition before a magistrate in the Wayne County Court of Common Pleas on September 25, 2023. During cross-examination, Haven repeatedly failed to directly respond to questions and remained highly agitated. At one point, the magistrate admonished Haven, stating: "[A]nswer the question that is asked of you, nothing else." However, Haven continued to provide erratic responses and commentary throughout the hearing, requiring repeated redirection by his counsel and the magistrate.

**{¶ 12}** Eventually, after a short break, the magistrate decided to suspend the hearing. The magistrate was concerned that Haven either was incompetent to proceed or could have a mental-health crisis if the hearing proceeded. Additionally, the magistrate was concerned about the general welfare of everyone in the courtroom.

**{¶ 13}** The magistrate ordered Haven to schedule a psychological evaluation, finding it "necessary and appropriate that [he] submit to a psychological assessment to determine his competency in order to proceed in properly litigating this case and assisting his counsel." In March 2024, a psychologist found that Haven was "cognitively able to participate in the court process" but noted that Haven's judgment was "strongly suspicious as his world appears to have been shattered" by the looming divorce.

### C. Disciplinary Hearing

**{¶ 14}** The panel noted that during his disciplinary hearing, Haven had numerous irrational and irrelevant outbursts. It further noted that as of the date of the hearing, Haven apparently continued to suffer from the same mental-health issues that afflicted him at the time of the charged misconduct.

*D. Board Findings*

**{¶ 15}** Based on the evidence and stipulations of the parties, the board found by clear and convincing evidence that Haven's conduct violated Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice) and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). *See Disciplinary Counsel v. Gernert*, 2024-Ohio-1946, ¶ 19 ("in order to find a violation of Prof.Cond.R. 8.4(h), the evidence must demonstrate that either (1) the lawyer engaged in misconduct that adversely reflects on the lawyer's fitness to practice law even though that conduct is not specifically prohibited by the rules or (2) the conduct giving rise to a specific rule violation is so egregious as to warrant an additional finding that it adversely reflects on the lawyer's fitness to practice law"), citing *Disciplinary Counsel v. Bricker*, 2013-Ohio-3998, ¶ 21.

## II. SANCTION

**{¶ 16}** When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 17}** The board found that no aggravating factors are present in this case. *See* Gov.Bar R. V(13)(B). As for mitigating factors, the board found that Haven had no prior disciplinary record and that other penalties or sanctions had been imposed for his misconduct. *See* Gov.Bar R. V(13)(C)(1) and (6). The board also considered Haven's treatment in lieu of conviction, in which he has completed 60 hours of community service, a 72-hour diversion program, and more than 160 hours of Veterans Affairs in-house treatment and counseling. The board also noted that Haven had paid all outstanding fines and costs related to his convictions, although he remains on probation until July 2025.

**{¶ 18}** The board recommends that we suspend Haven from the practice of law in Ohio for one year, with his reinstatement conditioned on (1) his petitioning for reinstatement under Gov.Bar R. V(25), (2) his completion of the intervention-in-lieu-of-conviction program in his improper-handling case or any sanction imposed by the court if he fails to complete the program, (3) his having no pending criminal matters or any form of community-control sanction deriving from his current, or any future, criminal case(s), (4) his completion of three hours of continuing legal education ("CLE") focused on alcoholism, substance abuse, or mental-health issues, in addition to the requirements of Gov.Bar R. X, (5) his completion of an evaluation by the Ohio Lawyers Assistance Program ("OLAP") and compliance with any resulting treatment recommendations, and (6) his providing documentation from a qualified healthcare professional, selected or approved by relator, (a) certifying that Haven does not suffer from a mental or substance-use disorder that would impair his ability to practice law and (b) opining that Haven is able to return to the competent, ethical, and professional practice of law.

**{¶ 19}** In making this recommendation, the board relied on various cases, including *Cleveland Metro. Bar Assn. v. Strauss*, 2021-Ohio-1263; *Warren Cty. Bar Assn. v. West*, 1995-Ohio-333; *Disciplinary Counsel v. Howard*, 2009-Ohio-4173; and *Erie-Huron Cty. Bar Assn. v. Bailey and Bailey*, 2020-Ohio-3701.

**{¶ 20}** In *Strauss*, the attorney rear-ended a police cruiser on Interstate 271 in snowy conditions and left the scene without stopping. Strauss eventually abandoned his vehicle, fled on foot, and was arrested while walking in the middle of a nearby road. A breath-alcohol test performed soon thereafter showed that Strauss had a blood-alcohol content of 0.148. He was convicted of six misdemeanor offenses, including operating a vehicle while intoxicated. We concluded that Stauss's misconduct violated Prof.Cond.R. 8.4(b) (committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness) and

8.4(h). There were no aggravating factors, while mitigation included the absence of a prior disciplinary record and Strauss's cooperation in the disciplinary process. *Id.* at ¶ 10-11. We imposed a one-year suspension, fully stayed on the conditions that he engage in no further misconduct and abide by the terms of the probation imposed by the municipal court. *Id.* at ¶ 18.

{¶ 21} In *West*, the attorney became intoxicated at his office after his fiancée told him that she was ending their relationship. West then began to threaten suicide and instigated a standoff with police officers for several hours, during which he threatened to shoot the officers if they did not leave his property. West eventually stepped outside, discharged his gun, and temporarily got behind the wheel of a police cruiser before police were able to persuade him to put his gun down. He was taken into custody and diagnosed with acute alcohol intoxication. West pleaded guilty to, and was convicted of, carrying a concealed weapon. We concluded that West's conduct violated a former disciplinary rule equivalent to Prof.Cond.R. 8.4(h). There were no aggravating factors, while the only mitigating factor we identified was evidence of West's good reputation. *See id.* at ¶ 5-8. We imposed a two-year suspension with one year stayed on the condition that West continue his compliance with the OLAP requirements. *Id.* at ¶ 11.

{¶ 22} In *Howard*, 2009-Ohio-4173, the attorney discharged a firearm out a window into his backyard, where a police officer was conducting an investigation in the attorney's neighborhood. Although Howard initially mistook the officer for a trespassing intruder, he refused to communicate with the police once he had learned the truth. A standoff ensued, lasting several hours, which ended only after SWAT officers fired tear gas into Howard's home. Ultimately, Howard pleaded guilty to two felonies, and we concluded that his conduct violated a former disciplinary rule equivalent to Prof.Cond.R. 8.4(b). The board found mitigating the fact that Howard had practiced for nearly 30 years without prior discipline, cooperated in the disciplinary proceedings, had other penalties imposed for his

misconduct, and submitted letters in support of his character and reputation. *Id.* at ¶ 15. However, because Howard had "'twice shot a loaded handgun at a uniformed police officer at close range,' " the board "found the aggravating factors overwhelming." *Id.* at ¶ 16, quoting the board's report. The board also cited concerns about Howard's mental health—at the time of the incident and of the hearing—in making its recommendation. *Id.* at ¶ 18-20. We imposed a two-year suspension and conditioned Howard's reinstatement on his proving to a reasonable degree of psychological certainty that he was able to return to the competent, ethical, and professional practice of law. *Id.* at ¶ 25.

**{¶ 23}** In *Bailey and Bailey*, 2020-Ohio-3701, an attorney refused to participate in a client's trial on the grounds that the court had refused to appoint his requested expert witness. Bailey apparently believed that this strategy would require the court to continue the trial to reconsider its prior rulings, stay the trial, or declare a mistrial. The court found Bailey in direct contempt of court for his conduct, sentenced him to 30 days in jail, and imposed a fine. We concluded that Bailey's misconduct violated Prof.Cond.R. 3.5(a)(5) (requiring a lawyer to refrain from conduct intended to disrupt a tribunal), 3.5(a)(6) (prohibiting a lawyer from engaging in undignified or discourteous conduct that is degrading to a tribunal), and 8.4(d). Two aggravating factors were present—Bailey had committed multiple offenses and refused to acknowledge the wrongfulness of his conduct. *Id.* at ¶ 33, 40-41. Mitigating factors included the absence of prior discipline, the absence of a dishonest or selfish motive, evidence of his good character and reputation, and the imposition of other sanctions for his contempt of court. *Id.* at ¶ 33. We imposed a one-year suspension with six months stayed on the condition that he engage in no further misconduct. *Id.* at ¶ 46.

**{¶ 24}** We agree with the board that Haven's conduct violated Prof.Cond.R. 8.4(d) and 8.4(h), and that *Strauss*, *West*, *Howard*, and *Bailey and Bailey* are instructive regarding the appropriate sanction in this case. Haven's misconduct was

8

egregious, but his actions did not adversely affect clients or involve acts of dishonesty. Instead, his misconduct calls into question his fitness to practice law. As in *Strauss*, *West*, and *Howard*, the reckless and dangerous actions leading up to Haven's OVI and firearm charges put officers in danger. Haven's firearm violation created a more dangerous situation than that in *Strauss*, which is why a sanction more severe than a fully stayed one-year suspension is warranted here. However, unlike West and Howard, Haven did not brandish or discharge a firearm during his standoff with law-enforcement officers, nor was his standoff premised on threats to shoot them; rather, Haven was telling officers to shoot him. Therefore, Haven's misconduct warrants a sanction less severe than West's and Howard's, while his mental-health crisis leading up to the standoff requires strict conditions on his reinstatement.

{¶ 25} As for Haven's misconduct during his divorce and disciplinary hearings, we find that his actions were less egregious than the attorney's misconduct in *Bailey and Bailey*. Haven's disruptions were not intentional like Bailey's but, rather, were caused by Haven's ongoing mental-health crisis. We therefore find that the reinstatement conditions that the board proposed are appropriate to address these aspects of his misconduct. *See Cincinnati Bar Assn. v. Ludwig*, 2021-Ohio-3971, ¶ 30 (requiring an attorney receiving a term suspension to complete the reinstatement process provided by Gov.Bar R. V(25) for attorneys who receive indefinite suspensions when the attorney was mentally unfit to practice law). Therefore, and giving due consideration to the sanctions imposed in *Strauss*, *West*, and *Howard*, we agree with the board that a one-year suspension, with conditions on Haven's reinstatement, is the appropriate sanction for his misconduct. We conclude that this sanction will adequately protect the public. *See Disciplinary Counsel v. Schuman*, 2017-Ohio-8800, ¶ 17 ("Protecting the public . . . is not strictly limited to protecting clients from a specific attorney's potential misconduct.

Imposing attorney-discipline sanctions also protects the public by demonstrating to the bar and the public that this type of conduct will not be tolerated.").

## III. CONCLUSION

{¶ 26} Accordingly, Rodney Eugene Haven is suspended from the practice of law in Ohio for one year, with his reinstatement conditioned on (1) his petitioning for reinstatement under Gov.Bar R. V(25), (2) his completion of the intervention-in-lieu-of-conviction program in his improper-handling case or any sanction imposed by the court if he fails to complete the program, (3) his having no pending criminal matters or any form of community-control sanction deriving from his current, or any future, criminal case(s), (4) his completion of three hours of CLE focused on alcoholism, substance abuse, or mental-health issues, in addition to the requirements of Gov.Bar R. X, (5) his completion of an OLAP evaluation and compliance with any resulting treatment recommendations, and (6) his providing documentation from a qualified healthcare professional, selected or approved by relator, (a) certifying that Haven does not suffer from a mental or substance-use disorder that would impair his ability to practice law and (b) opining that Haven is able to return to the competent, ethical, and professional practice of law. Costs are taxed to Haven.

Judgment accordingly.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Matthew A. Kanai and Ryan N. Sander, Assistant Disciplinary Counsel, for relator.

Rodney Eugene Haven, pro se.

_____