[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Taylor*, Slip Opinion No. 2025-Ohio-4804.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-4804

DISCIPLINARY COUNSEL *v.* TAYLOR.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Taylor*, Slip Opinion No. 2025-Ohio-4804.]

*Attorneys—Misconduct—Violations of Rules of Professional Conduct—Failure to attend disciplinary hearing—Eighteen-month suspension with six months conditionally stayed.*

(No. 2025-0482—Submitted May 13, 2025—Decided October 23, 2025.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2024-020.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and DEWINE, DETERS, HAWKINS, and SHANAHAN, JJ. FISCHER, J., concurred in judgment only. BRUNNER, J., did not participate.

**Per Curiam.**

{¶ 1} Respondent, Ronald Coleman Taylor Jr., of Fort Thomas, Kentucky, Attorney Registration No. 0083298, was admitted to the practice of law in Ohio in 2008.[1]  On April 26, 2024, we imposed an interim remedial suspension on Taylor under Gov.Bar R. V(19)(B), after receiving substantial, credible evidence demonstrating that he had committed a violation of the Ohio Rules of Professional Conduct and posed a substantial threat of serious harm to the public.  *Disciplinary Counsel v. Taylor*, 2024-Ohio-1622.  That suspension remains in effect.

{¶ 2} In a September 2024 complaint, relator, disciplinary counsel, charged Taylor with two ethical violations arising from incidents that occurred on April 8, 2024.  First, he threatened a group of people assembled outside his former employer's office, and then later that day, he sent a series of text messages threatening to harm his former employer and others.

{¶ 3} The parties entered into stipulations of fact and misconduct and submitted 11 stipulated exhibits.  They agreed that just one mitigating factor was present and jointly proposed that Taylor be suspended from the practice of law for 18 months, with one year of the suspension conditionally stayed and with certain conditions on his reinstatement that are related to his health.  Taylor did not attend the hearing conducted by a three-member panel of the Board of Professional Conduct, nor is he represented by counsel.  Because relator was the only person in the disciplinary process who had spoken with Taylor, disciplinary counsel sought to withdraw the parties' recommended sanction at the hearing and leave the issue to the panel's discretion.

{¶ 4} Based on the parties' stipulations and supporting evidence, the panel found by clear and convincing evidence that Taylor did engage in the charged misconduct.  After considering the applicable aggravating and mitigating factors

---

1. Taylor is also licensed to practice law in Kentucky.

and our precedent, the panel recommended that Taylor be suspended from the practice of law for 18 months, with one year of the suspension stayed on the condition of no further misconduct. The panel further recommended that Taylor's reinstatement to the profession be conditioned on the tender of (1) proof that he has submitted to an assessment by the Ohio Lawyers Assistance Program ("OLAP") and is complying with any treatment or counseling recommendations resulting from that assessment and (2) an opinion from a qualified healthcare professional that he is capable of returning to the competent, ethical, and professional practice of law. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction. No objections have been filed.

{¶ 5} After independently reviewing the record and our precedent, we adopt the board's findings of misconduct, but given the nature of Taylor's misconduct and the absence of any information regarding his mental status, we conclude that a longer period of actual suspension from the practice of law is necessary to protect the public. We therefore suspend Taylor from the practice of law for 18 months with six months of the suspension stayed on the conditions recommended by the board and adopt the board's recommended conditions for Taylor's reinstatement to the profession.

## MISCONDUCT

{¶ 6} The stipulated evidence shows that on April 8, 2024, Taylor, a former employee of the law firm Blake R. Maislin, L.L.C., drove to the firm's office in Cincinnati. Taylor jumped out of his car with a shaved head and markings on his face, which Taylor called "war paint." He retrieved a hatchet and a metal baseball bat from his trunk. He then made several threatening comments to a group of people assembled outside the law-office building, including employees of his former firm, who were outside to observe a total solar eclipse. Among other things, Taylor screamed for Blake Maislin to come outside and face him in a duel.

**{¶ 7}** Most of the law firm's employees retreated into the building. However, Taylor's former legal assistant approached him, managed to calm him down, and convinced him to leave without further incident. Although someone from the law firm had called police, Taylor left before officers arrived. No criminal charges were filed against Taylor.

**{¶ 8}** Later that same day, Taylor sent his former legal assistant a series of text messages, stating:

> I'm a Blackfeet Warrior. You want to do work? I will take scalps.
>
> I was praying Blake would come out. I was praying that he would choose the bat since he likes baseball, so I could execute my plan and take his scalp and drink his blood in front of you and while I raged like a deranged starving cornered vengeful beast that prayed [sic] on its predator.
>
> . . .
>
> So don't think that the jew whose dad was a judge and family was in the trucking industry, who I outweigh by 40 lbs of muscle, who I shaved my head in preparation for would ever have a chance in warfare. I drew a bulls on my Adams Apple and jugular in case he chose the hatchet, but that would have fucking seriously pissed me off because I couldn't take scalps until I brained him with that bat.
>
> . . .
>
> There is another device called a Molotov cocktail that I think would be tremendously effective during a big mediation, bring some innocents into it, to exponentially heighten the mother fucking horror.

**{¶ 9}** The board found by clear and convincing evidence that Taylor violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness) by threatening harm to Maislin. The board also found by clear and convincing evidence that Taylor violated Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in any other conduct that adversely reflects on the lawyer's fitness to practice law) when he challenged Maislin to a duel and threatened to use a Molotov cocktail to firebomb the building housing Maislin's law office to cause harm to innocent occupants. *See Disciplinary Counsel v. Bricker*, 2013-Ohio-3998, ¶ 21. We adopt these findings of misconduct.

### SANCTION

**{¶ 10}** The primary purpose of attorney discipline "is not to punish the offender, but to protect the public." *Disciplinary Counsel v. O'Neill*, 2004-Ohio-4704, ¶ 53. When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 11}** The parties did not stipulate to any aggravating factors. However, the board found that Taylor committed multiple offenses when he appeared in person at the office building and again when he texted his former legal assistant threatening harm to his former employer and the occupants of the building that housed the law office, including the "innocents." *See* Gov.Bar R. V(13)(B)(3). In addition, the board found that Taylor failed to appear at the February 18, 2025 disciplinary hearing and waited until just minutes before the hearing was set to begin to inform relator that he would not be attending. *See* Gov.Bar R. V(13)(B)(5).

**{¶ 12}** As for mitigating factors, the parties stipulated and the board found that Taylor had no prior discipline. *See* Gov.Bar R. V(13)(C)(1). Although Taylor

acknowledged his wrongdoing by entering into stipulations, the board found that that factor was tempered by his failure to appear at his disciplinary hearing. At the hearing, disciplinary counsel informed the panel that during the investigation, there had been some discussion of a mental disorder underlying Taylor's misconduct and that Taylor had intended to present evidence on that point at the hearing that he ultimately did not attend.

{¶ 13} The board recommends that we adopt the sanction proposed by the parties—an 18-month suspension with one year conditionally stayed and additional conditions on Taylor's reinstatement to the practice of law. In support of that sanction, the board considered several cases involving attorneys who threatened to harm themselves or others, including *Disciplinary Counsel v. Hoover*, 2022-Ohio-769; *Disciplinary Counsel v. Haven*, 2024-Ohio-5278; and *Disciplinary Counsel v. Bissell*, 2024-Ohio-1974.

{¶ 14} Regarding *Hoover*, while experiencing a manic psychological episode, Hoover had walked his property carrying a shotgun and looking for trespassers. He threatened one of his tenants and told him to leave, but the tenant retreated into his apartment and called for help. Hoover threatened to shoot the tenant and used a baseball bat to break the tenant's sliding glass door before law-enforcement officers responded to the tenant's calls for help. *Hoover* at ¶ 7-9, 11.

{¶ 15} After receiving treatment and being restored to competency, Hoover pleaded guilty to aggravated burglary, a felony, and menacing, a misdemeanor. *Id*. at ¶ 7-14. He was sentenced to three years of intensive community control and was required to continue his mental-health treatment. *Id*. at ¶ 14. We found that Hoover's conduct adversely reflected on his fitness to practice law. Without aggravating factors and with significant mitigating factors—including a mental disorder that satisfied the criteria of Gov.Bar R. V(13)(C)(7)—we suspended him from the practice of law for two years, with credit for the nearly 18 months that he had served under our interim felony-suspension order. *Id.* at ¶ 30. We also imposed

conditions on Hoover's reinstatement to ensure that he adhered to his treatment regimen. *Id*.

{¶ 16} Regarding *Haven*, during a mental-health crisis in which he was armed with a gun and threatening harm only to himself, Haven engaged in an hour-long standoff with law-enforcement officers following a traffic stop. *Haven*, 2024-Ohio-5278, at ¶ 5-8. Following his arrest, he was found to have a blood-alcohol content more than three times the legal limit. Consequently, Haven pleaded guilty to charges of improperly handling a firearm and operating a vehicle while intoxicated ("OVI"). He completed treatment in lieu of conviction for the firearm offense and was sentenced to three days of incarceration or a 72-hour driver-intervention program and 12 months of community control for the OVI. *Id*. at ¶ 10.

{¶ 17} No aggravating factors were present in *Haven*, while two are present here. *Id*. at ¶ 17. Like Taylor, Haven had a clean disciplinary record, but he also had other sanctions imposed for his misconduct. *Id*. Although there was insufficient evidence in *Haven* to establish the existence of a mitigating mental disorder under Gov.Bar R. V(13)(C)(7), we noted that the psychologist who evaluated Haven in conjunction with Haven's then-pending divorce found that he was "'cognitively able to participate in the court process'" but that his judgment was "'strongly suspicious as his world appear[ed] to have been shattered' by the looming divorce." *Id*. at ¶ 13. We suspended Haven's law license for one year with strict conditions on his reinstatement to the bar to ensure that he would be capable of resuming the competent, ethical, and professional practice of law, including requirements that he complete an OLAP assessment and comply with any treatment recommendations. *Haven* at ¶ 26.

{¶ 18} Regarding *Bissell*, because *Bissell* was a consent-to-discipline case, we did not issue a formal opinion. According to the board report filed in case No. 2024-0482, Bissell reacted to another driver who honked her horn at him by leaving his vehicle, approaching the other driver's vehicle, and spitting in the driver's face.

This behavior caused the driver to inadvertently lift her foot from the brake, whereupon her car rolled into the rear of Bissell's vehicle. Bissell began screaming at the driver, falsely stating that he was a police officer, and claiming that he had a weapon in his vehicle and would kill her if she did not have insurance. Bissell also made false statements about the incident to the responding police officer. As a result of that incident, Bissell was convicted of disorderly conduct, for which he was fined $50.

{¶ 19} The parties stipulated that Bissell had acted with a selfish or dishonest motive and had committed multiple offenses. But compared to the single mitigating factor present here, five mitigating factors were present in *Bissell*. Specifically, the parties stipulated that Bissell had a clean disciplinary record, had fully cooperated in the disciplinary process, had other sanctions imposed for his misconduct, presented evidence of his good character, and had pursued other interim rehabilitation consisting of his participation in an OLAP assessment and commencement of outpatient therapy during the pendency of his disciplinary proceeding.

{¶ 20} We followed the board's recommendation and adopted the parties' consent-to-discipline agreement and imposed their agreed sanction: a conditionally stayed two-year suspension. *Bissell*, 2024-Ohio-1974.

{¶ 21} We find Taylor's misconduct more egregious than Bissell's. While Bissell's threats were a spontaneous act of road rage that did not involve the brandishing of a weapon, Taylor's misconduct was premeditated. He shaved his head and applied "war paint" to his face before driving to his former employer's office. Once there, Taylor removed two weapons from his car—a hatchet and a metal baseball bat—and carried them as he made threats directed toward his former employer and multiple former colleagues, many of whom witnessed his behavior. Making matters worse, after Taylor left his former employer's office, he sent text

messages to his former assistant threatening to firebomb the building that housed his former employer's office and harm "innocents."

{¶ 22} And in contrast to Bissell's five mitigating factors, the board effectively found just one mitigating factor present here—Taylor's clean disciplinary record. Although the board recognized that Taylor acknowledged his wrongdoing by entering into stipulations of fact and misconduct, it noted that his cooperation was tempered by the fact that he failed to attend his disciplinary hearing. Taylor's failure to attend the hearing left the panel, the board, and this court with no evidence regarding Taylor's mental health at the time of his misconduct or any treatment that he may have received in the interim.

{¶ 23} Having independently reviewed the record and our precedent, we conclude that the severity of Taylor's misconduct falls in the range of misconduct addressed in *Hoover*, *Haven*, and *Bissell*. But in contrast to Hoover, who submitted substantial evidence regarding his mental-health diagnoses and extensive treatment, Taylor failed to appear at his disciplinary hearing and has not offered even the most rudimentary evidence regarding the behavioral-health issues that undoubtedly contributed to his unconventional, erratic, and threatening behavior on April 8, 2024. We therefore conclude that Taylor requires more time away from the practice of law than six months of the 18-month partially stayed suspension that the board recommends. Instead, we conclude that a sanction more comparable to the one-year suspension we imposed in *Haven* is necessary to protect the public and ensure that Taylor is capable of resuming the competent, ethical, and professional practice of law.

## CONCLUSION

{¶ 24} Accordingly, Ronald Coleman Taylor Jr. is suspended from the practice of law in Ohio for 18 months, with six months of the suspension stayed on the conditions that he commit no further misconduct and pay the costs of these proceedings. In addition to the requirements of Gov.Bar R. V(24), which governs

reinstatement proceedings, Taylor's reinstatement to the profession shall be conditioned on the submission of (1) proof that he has submitted to an OLAP assessment and that he has complied with any treatment or counseling recommendations arising from that assessment and (2) a report from a qualified healthcare professional stating that Taylor is capable of resuming the competent, ethical, and professional practice of law.  Costs are taxed to Taylor.

Judgment accordingly.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Matthew A. Kanai, Assistant Disciplinary Counsel, for relator.

Ronald Coleman Taylor Jr., pro se.

_____